TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

JOSEPH W. CRUSHAM, Trial Attorney (CA Bar No. 324764)
Wildlife & Marine Resources Section
PETER BROCKER, Trial Attorney (NYS Bar No. 5385448)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 307-1145 (Crusham)
Email: joseph.crusham@usdoj.gov
Phone: (202) 305-8636 (Brocker)
Email: peter.brocker@usdoj.gov

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILD HORSE EDUCATION, and LAURA LEIGH, individually,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JOHN RABY, in his official capacity as Nevada State Director of the Bureau of Land Management,<br><br>*Federal Defendants.* | Case No. 3:23-cv-00372-LRH-CLB<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

i

# TABLE OF CONTENTS

PAGE

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

   I.   Whether Analyzed Under APA Section 706(1) or 706(2), Plaintiffs' First Claim Should be Dismissed as a Matter of Law. ............................................................................................ 1

      A.   Plaintiffs' Section 706(1) Claim Fails as a Matter of Law Because They Identify No Specific Legislative Command Requiring BLM to Undergo Rulemaking. ................. 1

      B.   Plaintiffs' Section 706(2)(D) Claim Also Fails as a Matter of Law. ............................. 3

         i.   The Claim Does Not Challenge Final Agency Action and is Time Barred. ............... 3

         ii.   Neither the CAWP Standards nor the PIM Are Substantive Rules. ........................... 5

   II.   Plaintiffs' Conclusory Allegations Are Insufficient to State a Claim Under NEPA. ......... 7

   III.   Plaintiffs' "Immediacy" Claim is Aimed Only at the 2017 EA and Fails for the Same Reasons as Their NEPA Claim. .......................................................................................... 9

   IV.   Plaintiffs' First Amendment Claim Should be Dismissed. ................................................. 9

      A.   Plaintiffs Fail to Show that the Checkerboard Land Issue is Likely to Recur ............. 9

      B.   Plaintiffs' New Allegations of Past Viewing Restrictions Are Also Moot. ............... 11

      C.   Plaintiffs Do Not Respond to Federal Defendants' Other Arguments. ...................... 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ................................................................................................... 2

*Emanuel v. Collins*,
  No. 3:20-cv-00566-RCJ-CLB, 2022 WL 1271751 (D. Nev. Mar. 17, 2022) ......................... 1, 3

*Friends of Animals v. BLM,*
  548 F. Supp. 3d 39 (D.D.C. 2021) ............................................................................... 8

*Friends of Animals v. Culver,*
  610 F. Supp. 3d 157 (D.D.C. 2022) ............................................................................. 9

*Friends of Animals v. Pendley,*
  523 F. Supp. 3d 39 (D.D.C. 2021) ............................................................................ 6, 7

*Friends of Animals v. Silvey,*
  353 F. Supp. 3d 991 (D. Nev. 2018) ............................................................................ 8

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
  593 F.3d 923 (9th Cir. 2010) ...................................................................................... 2

*Hemp Indus. Ass'n v. Drug Enforcement Admin.*,
  333 F.3d 1082 (9th Cir. 2003) .................................................................................... 6

*Hoctor v. USDA*,
  82 F.3d 165 (7th Cir. 1996) ..................................................................................... 6, 7

*Korhonen v. Sentinel Ins., Ltd.*,
  No. 2:13-cv-00565-RCJ-NJK, 2014 WL 12789822 (D. Nev. Mar. 24, 2014) ...................... 3, 4

*Leigh v. Jewell*,
  No. 3:11-cv-608-HDM-WGC, 2014 WL 31675 (D. Nev. Jan. 3, 2014) ............................... 3

*Leigh v. Salazar*,
  954 F. Supp. 2d 1090 (D. Nev. 2013) ........................................................................ 12

*Lopez v. City of Anaheim*,
  No. 8:22-cv-1351-JVS, 2023 WL 4681059 (C.D. Cal. June 7, 2023) ............................... 7, 12

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) ................................................................................... 4

*Native Vill. of Nuiqsut v. BLM*,
  9 F.4th 1201 (9th Cir. 2021) .................................................................................................. 10

*Norton v. SUWA*,
  542 U.S. 55 (2004) .................................................................................................................... 2

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) .................................................................................................... 3

*Peri & Sons Farms, Inc. v. Acosta*,
  374 F. Supp. 3d 63 (D.D.C. 2019) ............................................................................................ 5

*San Luis Unit Food Producers v. United States*,
  709 F.3d 798 (9th Cir. 2013) .................................................................................................... 3

*W. Coast Seafood Processors Ass'n v. NRDC*,
  643 F.3d 701 (9th Cir. 2011) .................................................................................................. 11

**STATUTES**

28 U.S.C. § 1983 ............................................................................................................................ 9

**FEDERAL REGULATIONS**

40 C.F.R. §1502.9(d)(1)(ii) ............................................................................................................ 8
43 C.F.R. § 46.120(c) ..................................................................................................................... 7

# INTRODUCTION

Plaintiffs ignore many of Federal Defendants' arguments in their Opposition and—rather than defend the viability of the Amended Complaint—primarily seek leave to amend again. But their proposed Second Amended Complaint does not cure the defects identified by Federal Defendants' Motion. Thus, amendment would be futile. *See Emanuel v. Collins*, No. 3:20-cv-00566-RCJ-CLB, 2022 WL 1271751, at *2 (D. Nev. Mar. 17, 2022) ("Futility arises when the amendment is legally insufficient, or where the amended complaint would be subject to dismissal.") (cleaned up). Accordingly, the Court should grant Federal Defendants' Motion to Dismiss and should not permit Plaintiffs leave to file the Second Amended Complaint attached to their Opposition. If the Court decides to grant Plaintiffs leave to amend again, it should make clear that the proposed Second Amended Complaint is insufficient and grant leave to amend on a limited basis with respect to only the (theoretically) salvageable claims, as explained below.

# ARGUMENT

**I. Whether Analyzed Under APA Section 706(1) or 706(2), Plaintiffs' First Claim Should be Dismissed as a Matter of Law.**

Federal Defendants' Motion explained the incongruity between Plaintiffs' challenge to the procedure by which the CAWP Standards were issued—the relief for which would be invalidating the CAWP Standards under APA § 706(2)(D)—and the relief they appeared to desire: forcing BLM to undergo rulemaking under APA § 706(1). Dkt. 40 at 12. In Opposition, Plaintiffs clarify that they seek to proceed under both Sections. Dkt. 43 at 5. This claim was indeed confusingly pled, but Federal Defendants' Motion showed that it fails as a matter of law under either Section, Dkt. 40 at 8–13, and Plaintiffs' Opposition does not demonstrate otherwise.

**A. Plaintiffs' Section 706(1) Claim Fails as a Matter of Law Because They Identify No Specific Legislative Command Requiring BLM to Undergo Rulemaking.**

Plaintiffs incorrectly argue that the APA's six-year statute of limitations and final agency action requirement do not apply to a Section 706(1) claim, Dkt. 43 at 5–7, but the Court need not reach those issues because Plaintiffs cannot state a claim under Section 706(1) regardless.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed

1

to take a *discrete* agency action that it is *required to take*." *Norton v. SUWA*, 542 U.S. 55, 64 (2004). Thus, the Court's "ability to 'compel agency action' is carefully circumscribed to situations where an agency has ignored a *specific legislative command*." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (emphasis added). As explained in Federal Defendants' Motion, there is nothing in either the Act or its regulations requiring BLM to promulgate a rule regarding humane handling of wild horses and burros. Dkt. 40 at 12–13.[1]

Plaintiffs do not claim otherwise. Instead, they generally cite to the Act and claim that the Secretary of the Interior has the "responsibility to issue regulations as deemed necessary." Dkt. 43 at 13. They argue that because the Act is "silent and ambiguous" regarding the meaning of "humane," BLM is required to issue "substantive" rather than "interpretative" rules on humane handling. *Id.* (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Plaintiffs miss the mark by conflating whether an action should be issued as a substantive rule with whether the Court can compel action under Section 706(1).[2] The "substantive" versus "interpretative" issue is unrelated to whether BLM failed to take discrete, mandatory action. Instead, it is a challenge to an agency action already taken, specifically the procedure by which it was issued, which is cognizable only under APA § 706(2)(D). Any claim under Section 706(2)(D) fails, as discussed below, but this issue is irrelevant to Plaintiffs' Section 706(1) claim.

In fact, Plaintiffs' argument demonstrates that they cannot state a claim under Section 706(1). Unable to identify anything in the Act showing that BLM is required to issue a rule regarding humane handling, Plaintiffs argue that the Act's *silence* should be implied to require rulemaking. Plaintiffs have it exactly backward. The Court can compel action under Section 706(1) only if "an agency has ignored a specific legislative command." *Hells Canyon*, 593 F.3d at 932; *see SUWA*, 542 U.S. at 63 (noting that, like mandamus, § 706(1) is "limited to enforcement

---

[1] Plaintiffs do not address Federal Defendants' argument that this claim also fails the discreteness prong of Section 706(1). *See* Dkt. 40 at 13. As explained in Federal Defendants' Motion, the humane handling language of the Act imposes a broad, non-discrete duty on BLM; therefore, compelling BLM to undergo rulemaking on that duty would compel non-discrete action. *Id.*

[2] *Chevron* is inapposite; it does not analyze or decide any issues related to when agency action can be compelled under APA § 706(1).

2

of a specific, unequivocal command") (cleaned up). By highlighting the absence of any such command, Plaintiffs confirm that any Section 706(1) claim should be dismissed with prejudice.

### B. Plaintiffs' Section 706(2)(D) Claim Also Fails as a Matter of Law.
#### i. The Claim Does Not Challenge Final Agency Action and is Time Barred.

Federal Defendants' Motion demonstrated that Plaintiffs' challenge to the procedure by which the CAWP Standards were issued in 2015 and 2016 is barred by the APA's six-year statute of limitations. Dkt. 40 at 8–9. Plaintiffs do not dispute that the six-year limitation applies to their Section 706(2)(D) claim or that each CAWP Standard was issued outside of the limitations period. Instead, Plaintiffs now argue that the CAWP Standards "were not final agency action" and that the limitations period did not begin to run until December 2020, when BLM issued Permanent Instruction Memorandum 2021-002 ("the PIM") which attaches both CAWP Standards. *See* Dkt. 43 at 7.[3] Plaintiffs' new argument fails because the PIM is not itself final agency action.

"To be subject to review under § 706(2)," Plaintiffs must challenge "final agency action." *Leigh v. Jewell*, No. 3:11-cv-608-HDM-WGC, 2014 WL 31675, at *3 (D. Nev. Jan. 3, 2014). This requirement is jurisdictional in this Circuit. *Id.* at *4 (citing *San Luis Unit Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013)). "For an agency action to be final, the action must (1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up).

Plaintiffs argue that the CAWP Standards were in "preliminary 'beta' form" when they were issued in 2015 and 2016 and that they were formalized via the PIM. Dkt. 43 at 7. But the CAWP Standards attached to the PIM are the ones issued in 2015 and 2016 unchanged. Moreover, this new theory is undercut by Plaintiffs' allegation that BLM "formally adopted" the CAWP Standards in 2015, five years prior to the PIM. *See* Dkt. 38 ¶ 22. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Korhonen v. Sentinel Ins., Ltd.*, No. 2:13-cv-00565-RCJ-NJK, 2014 WL 12789822, at *3 (D. Nev. Mar. 24,

---

[3] The PIM is available on BLM's website (https://www.blm.gov/policy/pim-2021-002) and subject to judicial notice. For ease of reference, Federal Defendants attach a copy of the PIM as Exhibit 1.

2014). This allegation remains in Plaintiffs' proposed new complaint. Dkt. 43-1 ¶ 22.

The PIM is not final agency action. By its own terms, it merely collects the various CAWP policies in one place and confirms BLM's intent to continue to follow them. It does not determine rights or obligations, and no legal consequences flow from it. The PIMs' "[p]urpose" is to "re-affirm" BLM's "longstanding commitment to ensure the humane treatment of wild horses and burros . . . in all on-range and off-range management activities through the [CAWP]." Ex. 1 at 2. The PIM provides that "[a]ll state, district, and field offices *will continue to comply* with the [wild horse and burro] CAWP policy[,]" defined to include the 2015 CAWP Gather Standards which "are also incorporated into helicopter gather contracts as specifications for performance"; training for those involved in "gather operations" on the CAWP Gather Standards; the 2016 CAWP Off-Range Standards which "are incorporated into off-range corral contracts as specifications for performance"; and training on the CAWP Off-Range Standards. *Id.* (emphasis added).[4]

Plaintiffs assert that it was not until after the PIM was issued that BLM began training its employees and contractors on the CAWP Standards and began incorporating them into contracts. Dkt. 43 at 7. But, as shown above, the PIM provides that BLM would "continue" those practices as part of following the CAWP Standards, meaning that these practices were already in place. Either way, Plaintiffs do not explain how the agency's implementation of internal training creates any rights, obligations, or legal consequences regarding the CAWP Standards. And the PIM does not create or modify any legal obligations for BLM's contractors—such obligations would only arise out of and flow from specific contracts. In sum, the PIM is not final agency action because it only re-affirms BLM's intent to follow the CAWP Standards and continue pre-existing practices. With no final agency action on which to focus, Plaintiffs' APA § 706(2)(D) claim fails.

Additionally, for similar reasons, Plaintiffs' pivot to the PIM does not overcome the statute of limitations. "Because an agency's renewal of an earlier decision does not alter the status quo, it does not restart the statute of limitations." *Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C.

---

[4] The PIM also suggests that the CAWP will include standards for "animals on the range, in off-range pastures, and public off-range pastures" that have not yet been developed. Ex. 1 at 3.

4

Cir. 2014). Again, the PIM just reaffirms the CAWP Standards and does not "substantive[ly] change" what BLM issued in 2015 and 2016, so any claim Plaintiffs may have had to challenge the procedure by which BLM issued the CAWP Standards remains barred. *See Peri & Sons Farms, Inc. v. Acosta*, 374 F. Supp. 3d 63, 71 n.3 (D.D.C. 2019) (finding that notice did not "restart the statute of limitations" because it did not "enact a substantive change" to prior action).

### ii. Neither the CAWP Standards nor the PIM Are Substantive Rules.

Since Plaintiffs admit that the CAWP Standards are not final agency action, the Court need not reach this issue to dismiss their APA § 706(2) claim. Nevertheless, should the Court reach Federal Defendants' alternative argument that Plaintiffs fail to state a Section 706(2) claim because the CAWP Standards are not the type of agency guidance required to be promulgated through rulemaking procedures, Plaintiffs' Opposition fails to rebut this argument. Nor could the claim be saved by Plaintiffs' proposal to refocus on the PIM. Their proposed Second Amended Complaint, which merely quotes from the CAWP Standards and inserts various legal conclusions about them and the PIM, cannot cure this issue. Thus, amendment would be futile.

Federal Defendants' Motion showed that Plaintiffs cannot state a Section 706(2)(D) claim that the CAWP Standards should have been issued via notice and comment procedures because such requirements apply only to "substantive" rules, which the CAWP Standards are not. Dkt. 40 at 10–11. Plaintiffs' responses have several flaws. First, Plaintiffs heavily quote from the CAWP Standards, arguing that they create "mandatory obligations that BLM staff, contractors, and associated partners must follow when removing horses from public lands." Dkt. 43 at 10–11. But this ignores that the basis for Plaintiffs' claim is to "force the BLM to promulgate [the] CAWP standards as *enforceable* rules[.]" Dkt. 38 ¶ 4 (emphasis added); *see also id.* ¶¶ 81–82. Plaintiffs repeatedly allege that they feel BLM does not comply with the CAWP Standards, and that BLM does not treat them as binding on itself. *See id.* ¶ 30 (alleging temperature standard not followed); ¶ 70 (same); ¶ 72 (alleging "general disregard for CAWP standards"); ¶ 73 (alleging "BLM has violated the CAWP standards"). Their argument now that these standards are "mandatory" enough to qualify as a "substantive rule" directly contradicts these allegations. To be clear,

5

1  Plaintiffs have not brought a claim to force BLM to comply with the CAWP Standards; in fact,
2  they allege that BLM's decision to adopt them as "unenforceable" policies "restrict[s] their ability
3  to enforce the BLM's mandate to humanely capture and remove wild horses." *Id.* ¶¶ 81–82.[5]
4  These allegations—which remain in the proposed new complaint—cannot be squared with what
5  is required to show that the CAWP Standards are substantive and needed to be issued through
6  notice and comment: that they "create rights, impose obligations, or effect a change in existing
7  law[.]" *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003).

8  More importantly, Plaintiffs do not address any of the authority from Federal Defendants'
9  Motion showing that—akin to internal agency manuals and handbooks—the CAWP Standards
10 merely establish guidelines for how BLM will exercise its broad discretion under the Act and are
11 thus not substantive. *See* Dkt. 40 at 10–11. In one of those cases, *Friends of Animals v. Pendley*,
12 the court examined another permanent instruction memorandum issued by BLM and determined
13 it was not a substantive rule. 523 F. Supp. 3d 39, 49, 52–55 (D.D.C. 2021). The court looked to
14 the language of the memorandum and found that it did not bind BLM or others, and that BLM
15 did not characterize it as doing so. *Id.* at 54–55. Now that Plaintiffs apparently seek to refocus on
16 the PIM itself, this case is even more on point. The PIM here merely re-affirms BLM's pre-
17 existing decision to follow the CAWP Standards and does not create any additional rights or
18 obligations or change existing law. *See supra*, page 4. As shown in Federal Defendants' Motion—
19 and uncontested by Plaintiffs—the Act affords BLM discretion in conducting gathers, and the
20 Act's humane handling provision imposes a broad duty on BLM. *See* Dkt. 40 at 11. The PIM
21 simply reiterates that BLM will utilize the CAWP Standards to exercise its broad discretion under
22 the Act; this does not require notice and comment. *See Friends of Animals*, 523 F. Supp. 3d at 53.

23 Plaintiffs' reliance on *Hoctor v. USDA* is misplaced. Dkt. 43 at 9. There, the statute at
24 issue required USDA to "formulate standards" governing the handling of animals consistent with
25 the Animal Welfare Act. *See* 82 F.3d 165, 167 (7th Cir. 1996). The USDA issued a rule via notice
26 and comment, and then later issued an "internal memorandum" requiring a specific height of

---

[5] As explained in Federal Defendants' Motion, any such claim would also fail. Dkt. 40 at 11 n.7.

6

perimeter fence for a subset of animals. *Id.* at 167–168. Because the height requirement was not an interpretation of the rule, the court held that the memorandum was an invalid substantive rule that should have gone through notice and comment. *See id.* 168–172. Here, the Act does not require BLM to formulate standards to carry out its duty to humanely gather wild horses and burros. Instead, the Act affords BLM wide discretion in fulfilling that broad duty.[6] Moreover, neither the PIM nor the CAWP Standards represent a change in an existing substantive rule, as did the memorandum in *Hoctor*. *Friends of Animals* is again instructive. There, the court held that the permanent instruction memorandum's guidance that gather decisions should be issued "at least 14 days prior to the proposed gather start date," did not "alter an existing legal right or obligation flowing from a statute or regulation" because neither the Act nor any prior substantive rule required a different deadline. *Friends of Animals*, 523 F. Supp. 3d at 54–55. Such is the case here. Plaintiffs point to nothing in the Act nor in any prior substantive rule issued by BLM establishing standards for humane handling that were altered by the PIM or the CAWP Standards.

Accordingly, Plaintiffs' APA § 706(2)(D) claim fails for the additional reason that the PIM is not a substantive rule and notice and comment rulemaking was not required.

**II.     Plaintiffs' Conclusory Allegations Are Insufficient to State a Claim Under NEPA.**

Federal Defendants' Motion demonstrated that Plaintiffs' NEPA claim fails because it is premised on the incorrect assertion that BLM needed to prepare a Determination of NEPA Adequacy, which is a mere "administrative convenience created by the BLM." Dkt 40 at 14 (citation omitted). Plaintiffs do not address this argument and thus concede its validity. *See, e.g.*, *Lopez v. City of Anaheim*, No. 8:22-cv-1351-JVS, 2023 WL 4681059, at *3 (C.D. Cal. June 7, 2023) (noting that failure to address an argument in response to a motion to dismiss concedes it).

Next, Federal Defendants' Motion demonstrated that Plaintiffs' reliance on 43 C.F.R. § 46.120(c) is misplaced because the regulation applies only to new actions. Dkt. 40 at 14. BLM decided to conduct gathers through 2027 on the Antelope and Triple B Complexes in the Decision

---

[6] Plaintiffs agree, arguing that aside from generally stating that humane treatment includes "proper transportation, feeding, and handling," Congress provided "[n]o further instruction" as to how BLM "should fulfill the Act's mandate for humane treatment." Dkt 43 at 10.

7

Record, such that this past summer's gathers and any future gathers through 2017 are mere steps that implement the Decision Record, the environmental effects of which were thoroughly analyzed by the 2017 EA. *Id.* at 14–15. In response, Plaintiffs baldly assert that every gather conducted or to be conducted after the Decision Record is "new action[.]" Dkt. 43 at 15. This assertion ignores the Decision Record's ten-year scope—which this Court upheld against a similar challenge—and that it authorizes multiple gathers. *See Friends of Animals v. Silvey*, 353 F. Supp. 3d 991, 1004 (D. Nev. 2018), *aff'd*, 820 F. App'x 513 (9th Cir. 2020) (observing that the Decision Record "allows for the gathering of wild horses over a ten-year period," and rejecting argument that BLM violated its own policies by relying on the 2017 EA and "not [] drafting separate EAs for each roundup approved under the plan"). In any event, Plaintiffs cite no authority in support of their argument, nor do they address the cases relied on by Federal Defendants.

And as Federal Defendants' Motion explained, Plaintiffs have not plausibly alleged that BLM needs to supplement the 2017 EA. Dkt. 40 at 15. To do so, Plaintiffs must plausibly allege "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Id.* (quoting 40 C.F.R. § 1502.9(d)(1)(ii)). The Amended Complaint does not do this—it vaguely states that if BLM had done a new NEPA analysis, "Plaintiffs would have expected evaluation of new circumstances, new information, or changes[.]" Dkt. 38 ¶ 93. That BLM would have evaluated "new circumstances" had it done a new NEPA analysis is circular and conclusory. And Plaintiffs' vague allegations that BLM would have considered "the current foaling season, heavy snowfall during the 2022-2023 winter, current range conditions, efficacy of growth suppression methods, and more" in a new NEPA document are too generalized to state a claim. For example, Plaintiffs do not allege any facts to suggest what they believe the "current range conditions" are, how they differ from those analyzed in the 2017 EA, and if and how any difference is a significant new circumstance demanding supplementation. Plaintiffs' claim amounts to a categorical assertion that BLM must do new NEPA analysis each time it gathers wild horses and that, if it fails to do so, it necessarily has failed to take a "hard look" at environment impacts as required by NEPA. Courts have rejected this theory. *See Friends*

8

*of Animals v. BLM,* 548 F. Supp. 3d 39, 64 (D.D.C. 2021) (upholding ten-year gather plan EA and rejecting argument that "NEPA requires consideration of every possible implementation action or the particulars of each gather to satisfy the 'hard look' requirement").

Simply put, Plaintiffs have failed to allege sufficient facts to state a NEPA claim challenging the 2017 EA. While it is theoretically possible for them to plead additional facts and state a claim, their proposed Second Amended Complaint does not even attempt to do so.

### III. Plaintiffs' "Immediacy" Claim is Aimed Only at the 2017 EA and Fails for the Same Reasons as Their NEPA Claim.

Federal Defendants' Motion showed that BLM's second claim—ostensibly brought under the Act's "immediacy" provision—is focused on the 2017 EA and whether BLM's analysis needs to be updated. *See* Dkt. 40 at 16. Thus, for the same reasons that their NEPA claim fails, so too does this claim. Plaintiffs admit that, just like their NEPA claim, this claim's goal is to set aside the 2017 EA. Dkt. 43 at 13. Federal Defendants' Motion explained that the case relied on by Plaintiffs—*Friends of Animals v. Culver*—found that the decision record, not the NEPA document, violated the Act's immediacy provision. *See* 610 F. Supp. 3d 157, 168 (D.D.C. 2022) ("Plaintiff's argument against the ten-year 'phased' approach *of the Decision* fares far better.") (emphasis added). Thus, if Plaintiffs seek to state a separate claim under the Act's immediacy provision like *Culver*, they should amend to challenge the Decision Record. As it stands, this claim challenges only BLM's NEPA analysis and fails for the same reasons as their NEPA claim.

### IV. Plaintiffs' First Amendment Claim Should be Dismissed.

Plaintiffs admit that "damages under 42 U.S.C. § 1983 are not available[,]" Dkt. 43 at 16, but removal of the damages request fixes only one issue with Plaintiffs' First Amendment claim.[7] Federal Defendants' Motion identified several additional deficiencies. Dkt. 40 at 18–24. For those, Plaintiffs either propose inadequate amendments or ignore Federal Defendants' arguments.

#### A. Plaintiffs Fail to Show that the Checkerboard Land Issue is Likely to Recur.

The only factual allegation in the Amended Complaint concerning access restrictions is

---

[7] Plaintiffs' proposed new complaint still seeks "compensatory damages[.]" Dkt. 43-1 ¶ 121; *see also id.* at Prayer for Relief ¶ G (requesting damages "pursuant to 28 [*sic*] U.S.C. § 1983").

9

that BLM denied Plaintiffs access to a trap site during this summer's gathers on the Antelope Complex because it was located on land "only accessible through private roads[.]" *See* Dkt. 38 ¶ 75. As demonstrated in Federal Defendants' Motion, because this summer's gather operations are complete and Plaintiffs are not currently being denied access to the checkerboard land trap site, Plaintiffs' claim based on this allegation is moot unless they can show that the "capable of repetition, yet evading review" exception to mootness applies. *See* Dkt. 40 at 18.

Plaintiffs agree. They do not claim that there is any current checkerboard land restriction in place on the Antelope Complex; instead, they argue that "this is the hallmark of the type of case capable of repetition for which relief is warranted." Dkt. 43 at 17. Yet Plaintiffs fail to meet their burden to show the exception applies by establishing that "there is a reasonable expectation that they will once again be subjected to the challenged activity." *See Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201, 1209 (9th Cir. 2021). They point to nothing in the 2017 EA or Decision Record indicating that there is a reasonable expectation the checkerboard land issue will recur. Instead, they claim "[t]here is no evidence that [future] gathers will be conducted differently than past gathers." Dkt. 43 at 17. Pointing to the *absence* of evidence is insufficient for Plaintiffs to meet their burden. Moreover, the Amended Complaint contains no allegations suggesting that the checkerboard land issue has ever occurred in prior gathers on the Antelope Complex.

Unable to show that the allegations in the Amended Complaint are not moot, Plaintiffs seek leave to amend to allege that "BLM routinely and regularly interferes with the public's First Amendment rights during gather operations" and "routinely approve[s] hidden traps on private property." *Id.* at 17–18. These new allegations are vague, conclusory, and speculative. Their conclusory allegation does not even state the correct conclusion—the checkerboard land issue that occurred this past summer did not involve "hidden traps on private property," it involved BLM selecting a trap site on *public* land "only accessible through private roads[.]" *See* Dkt. 38 ¶ 75. Moreover, given their generalized nature, it is unclear whether the allegations pertain to past gathers on the Antelope Complex, or BLM gathers on other HMAs not at issue.

Federal Defendants' Motion explained that the circumstances that lead BLM to choose a

10

particular trap site—as well as any incumbent restrictions that BLM deems necessary for the safety of BLM, its contractors, the horses, and the public—are highly fact-specific and thus unlikely to recur. Dkt. 40 at 20–21. Plaintiffs thus cannot plausibly allege that the checkerboard land issue that occurred during one day of this past summer's Antelope Complex gathers will recur. Indeed, their vague new allegations confirm that they can offer only speculation that the issue will recur, which is insufficient. *See W. Coast Seafood Processors Ass'n v. NRDC*, 643 F.3d 701, 704–05 (9th Cir. 2011) ("[S]peculative possibility does not constitute 'a reasonable expectation.'"). Thus, to the extent Plaintiffs' First Amendment claim is based on the checkerboard land issue, it should be dismissed as moot, and further amendment would be futile.

### B. Plaintiffs' New Allegations of Past Viewing Restrictions Are Also Moot.

Plaintiffs seek to add new allegations concerning additional purported past viewing restrictions. They propose to allege that "BLM used trailers on repeated occasions to block Plaintiffs from viewing the gathers." Dkt. 43-1 ¶ 85. They also seek to allege that when BLM humanely euthanizes injured horses, it "frequently fails to photograph the injuries[.]" *Id.* ¶ 86. If BLM personnel temporarily placed trailers in a location that obstructed Plaintiffs' view of a gather, or if BLM personnel did not photograph something that Plaintiffs think they should have this past summer, just like the checkerboard land issue, such conduct is not ongoing, and it is Plaintiffs' burden to show there is a reasonable expectation it will recur. Bald assertions that these issues happened "frequently" or on "repeated occasions" during a past gather (perhaps not even on the Antelope Complex) fail to meet this burden. Thus, for the same reasons discussed above in relation to the checkerboard land allegations, these new allegations would also be subject to dismissal for mootness and thus their inclusion in any new amended complaint would be futile.[8]

### C. Plaintiffs Do Not Respond to Federal Defendants' Other Arguments.

Federal Defendants' Motion demonstrated that Plaintiffs' allegations concerning purported on-going restrictions on viewing horses gathered from the Antelope Complex this past

---

[8] Plaintiffs also allege nothing to support that there exists any right to continuous, unobstructed viewing of gathers, or that BLM has any duty to photograph gathers. *See* Dkt. 40 at 3 (setting forth legal standard for First Amendment claims).

summer in "capture pens, sorting pens, temporary holding corrals, and off-range holding corrals" were too conclusory and generalized to state a claim. Dkt. 40 at 21–22. Federal Defendants also showed that, contrary to Plaintiffs' allegations, Plaintiffs do not have a First Amendment right to "view wild horses being treated humanely." *Id.* at 22–23. Finally, Federal Defendants established that, if the Court construes Plaintiffs' fourth claim to impliedly plead a "humane handling" claim under the Act, any such claim should be dismissed as non-justiciable. *Id.* at 23–24.

Plaintiffs do not respond to any of these arguments. As discussed above, when a plaintiff entirely fails to address an argument in response to a motion to dismiss, the plaintiff impliedly concedes the argument, and dismissal is appropriate. *See, e.g.*, *Lopez*, 2023 WL 4681059, at *3. Although Plaintiffs could theoretically plead additional allegations to support a claim regarding on-going restrictions as to off-range holding corrals[9] on public land,[10] they propose no new allegations on this point. Thus, if the Court grants leave to amend on this issue, it should instruct Plaintiffs that they need to plead additional facts to state a claim. But as explained in Federal Defendants' Motion and not disputed by Plaintiffs, their claim to have a First Amendment right to view humane gathers fails a matter of law, as does any implied humane handling claim. Thus, leave to amend on these bases would be futile and should not be permitted.

## CONCLUSION

Accordingly, the Court should grant Federal Defendants' Motion. If the Court grants leave to amend, it should hold that the proposed Second Amended Complaint is insufficient and should permit Plaintiffs leave to amend only their second claim, third claim, and their fourth claim (if Plaintiffs can plausibly allege ongoing restrictions as to off-range holding corrals on public land).

---

[9] Horses from the Antelope Complex gathers are now in off-range holding corrals; therefore, Plaintiffs' vague, generalized claims as to "capture pens, sorting pens, [and] temporary holding corrals," Dkt. 43-1 ¶ 116, are moot and cannot be salvaged by more specific pleading.

[10] Plaintiffs have not alleged an inability to visit any off-range holding corral. *See* Dkt. 40 at 22 (explaining that Plaintiffs' vague allegations "do not identify any specific locations or allege that they have sought or been denied access to such locations"). But this Court has previously held that there is no qualified right to view short-term holding facilities on private land. *See Leigh v. Salazar*, 954 F. Supp. 2d 1090, 1104 (D. Nev. 2013). Thus, for similar reasons, any hypothetical claim regarding viewing restrictions could only possibly lie as to off-range corrals on public land.

12

Dated: December 11, 2023

Respectfully submitted,
TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Joseph W. Crusham*
JOSEPH W. CRUSHAM,
Trial Attorney (CA Bar No. 324764)
Wildlife & Marine Resources Section
PETER BROCKER
Trial Attorney (NYS Bar No. 5385448)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 307-1145 (Crusham)
Email: joseph.crusham@usdoj.gov
Phone: (202) 305-8636 (Brocker)
Email: peter.brocker@usdoj.gov

*Attorneys for Federal Defendants*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2023, I electronically filed and served the foregoing with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system, which will send notification of this filing to the attorneys of record.

*/s/ Joseph W. Crusham*
Joseph W. Crusham
Attorney for Federal Defendants