1  DANIELLE M. HOLT
   (Nevada Bar No. 13152)
2  DE CASTROVERDE LAW GROUP
   1149 S Maryland Pkwy
3  Las Vegas, NV 89104
   Ph (702) 222-9999
4  Fax (702) 383-8741
   danielle@decastroverdelaw.com
5
6  JESSICA L. BLOME
   (Cal. Bar No. 314898, admitted pro hac vice)
7  RAE LOVKO
   (Cal. Bar No. 208855, admitted pro hac vice)
8  GREENFIRE LAW, PC
   P.O. Box 8055
9  Berkeley, CA 94707
   (510) 900-9502
10 jblome@greenfirelaw.com
   rlovko@greenfirelaw.com
11
12 *Attorneys for Plaintiffs*

13            **UNITED STATES DISTRICT COURT**

14               **DISTRICT OF NEVADA**

15 WILD HORSE EDUCATION, a non-profit
   corporation and LAURA LEIGH,
16 individually,

17        Plaintiffs,                    CASE NO. 3:23-cv-00372-MMD-CLB

18            v.                         **PLAINTIFFS' NOTICE OF MOTION
                                         AND MOTION FOR RELIEF FROM
19 UNITED STATES DEPARTMENT OF           ORDER AND JUDGMENT AND
   INTERIOR, BUREAU OF LAND              MEMORANDUM IN SUPPORT**
20 MANAGEMENT, and JON RABY, Nevada
   State Director of the Bureau of Land
21 Management,

22        Defendants.

23

24

25

26

Page 1 of 17

To all parties and their attorneys of record:

PLEASE TAKE NOTICE that Plaintiffs Laura Leigh, individually, and Wild Horse Education, a non-profit corporation, by and through their counsel, hereby move this court for an order granting relief from the May 8, 2024 Order (ECF 048) issued by the Honorable Larry R. Hicks on Defendants' Motion to Dismiss.

Pursuant to Federal Rule of Civil Procedure 60 and common law, Plaintiffs ask that the Court rescind, reconsider, or modify its Order. Plaintiffs' motion is supported by the accompanying Memorandum of Points and Authorities; documents filed in this case; and any written or oral argument and authorities that are presented before the Court.

DATED: June 6, 2024

Respectfully submitted,

/s/ Danielle M. Holt
Danielle M. Holt
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
(702) 222-9999
danielle@decastroverdelaw.com

/s/ Rae Lovko
Rae Lovko
(Cal. Bar No. 314898,
admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
rlovko@greenfirelaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## I.      INTRODUCTION

In 2017, BLM adopted an Environmental Assessment (EA) that provides for gather operations in the Antelope and Triple B Complexes over a ten-year period of time. Plaintiff's First Amended Complaint (FAC) contains four causes of action associated with this EA and BLM's gather operations, which Defendants sought to dismiss based upon Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). In ruling on Defendants' motion, the Court issued an order dismissing Plaintiffs' First Cause of Action with prejudice, dismissing Plaintiffs' Second Cause of Action without prejudice, dismissing Plaintiffs' Third Cause of Action without prejudice, and dismissing Plaintiffs' Fourth Cause of Action without prejudice. The Court further ordered that if Plaintiffs wished to file a second amended complaint, such complaint should be filed within 30 days from the filing of the Court's Order, with failure to file resulting in dismissal of Plaintiff's remaining causes of action with prejudice.

Plaintiffs file this motion to have the Court rescind, reconsider, or modify the Order issued on May 8, 2024. Such reconsideration is justified in the interest of justice.

## II.     LEGAL STANDARD

### A.      Rule 60 and Court's Inherent Power to Rescind, Reconsider, or Modify Orders

"A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law." *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 886 (9th Cir. 2001).

> Nothing in the [Federal] Rules limits the power of the court to correct mistakes made in its handling of a case so long as the court's jurisdiction continues, i.e., until the entry of judgment. In short, the power to grant relief from erroneous interlocutory orders, exercised in justice and good conscience, has long been recognized as within the plenary power of courts until entry of final judgment.

*Id.* at 886-887, quoting *United States v. Jerry*, 487 F.2d 600, 604 (3d Cir. 1973). This conclusion is supported by Rule 60 of the Federal Rules of Civil Procedure, which provides:

> the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed Rules Civ Proc R 60 (b).

Rule 60 does not curtail the common law power of federal courts to grant relief for manifest error or where action is appropriate to accomplish justice. *See City of L.A*, 254 F.3d at 887; *Patapoff v. Vollstedt's*, Inc., 267 F.2d 863, 865 (9th Cir. 1959). Subdivision (6), in particular, "vests power in courts adequate to enable them to vacate [orders and] judgments, whenever such action is appropriate to accomplish justice." *Id.* at 865-866. Accordingly, motions for relief "should be liberally construed for the purpose of doing substantial justice." *United States v. Gould*, 301 F.2d 353, 356 (5th Cir. 1962).

**B.      Rule 12(b)(1) and 12(b)(6)**

Defendants motion to dismiss was brought pursuant to Federal Rule of Procedure 12(b)1) and 12(b)(6). A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proving that jurisdiction does exist falls to the party asserting jurisdiction. *See id.* The motion to dismiss should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

To withstand a challenge under Rule 12(b)(6), "a complaint must set forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court reviewing a motion to dismiss under Rule 12(b)(6) must "accept[ ] as true all of the factual allegations contained in the complaint and draw[ ] all

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

inferences in favor of the nonmoving party." *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014) (quotation marks omitted). Moreover, a "complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)). Even if the defendants believes that its version will "prove to be the true one . . . that does not relieve defendants of their obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery." *Id.* Factual disputes are not appropriately addressed through a Motion to Dismiss. *See Farmer v. Las Vegas Metro. Police Dep't*, 2018 U.S. Dist. LEXIS 186660, at *7 (D. Nev. Oct. 31, 2018); *Ronpak, Inc. v. Elecs. for Imaging, Inc.*, U.S. Dist. LEXIS 4546, at *14 (N.D. Cal. Jan. 14, 2015).

### C.   Rule 8

Relatedly, the Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civil Proc. 8(a). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues," rather than requiring plaintiffs to define all their claims perfectly before further proceedings are conducted. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Here, discovery has not closed and the administrative record has not been certified. Plaintiffs also may set out multiple statements of a claim in a single count, and "the pleading is sufficient if any one of them is sufficient." Fed. R. Civil Proc. 8(d).

### III.   PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.   Procedural History

Plaintiffs' FAC was filed on September 14, 2023. ECF 038. The FAC contains four causes of action: the First Cause of Action challenges BLM's Comprehensive Animal Welfare Program Standards for Wild Horse and Burro Gathers and Comprehensive Animal Welfare Program Standards for Off-Range Corral Facilities, Transportation, and Adoption/Sale Events (collectively, CAWP Standards); the Second Cause of Action challenges BLM's reliance on a

phased Environmental Assessment (EA); the Third Cause of Action is based on BLM's violation of the National Environmental Policy Act (NEPA); the Fourth Cause of Action addresses BLM's violation of Plaintiffs' First Amendment rights. *Id.*

Plaintiffs initially sought a temporary restraining order or preliminary injunction, and an evidentiary hearing on this request was held on August 4, 2023. ECF 010; ECF 029. To allow for requests to redact portions of the hearing's transcript, the Court ordered that the transcript could not be released until December 21, 2023. ECF 039. Accordingly, Plaintiffs did not rely upon the transcript in opposing Defendants' Motion to Dismiss. Now that the release has been lifted, however, Plaintiffs ask the Court to consider the evidence presented at the evidentiary hearing.

On October 23, 2023, Defendants filed a Motion to Dismiss all of the causes of action in Plaintiffs' FAC based upon Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). ECF 040. Plaintiffs filed their opposition to this motion on November 27, 2023. ECF 043. Defendants filed their reply on December 11, 2023. ECF 044.

No hearing was held on Defendants' Motion to Dismiss. The Court issued its Order on May 8, 2024. ECF 048. On May 30, 2024, the case was reassigned to Chief Judge Miranda M. Du. ECF 049.

The Administrative Record in this case has not yet been certified.

**B.      Court's Order as to First Cause of Action**

The First Cause of Action focuses on BLM's legal obligation to follow Section 553 of the APA for rules addressing the humane treatment of wild horses and burros, which rules BLM has adopted as the CAWP Standards. ECF 038 at pp. 16-17. "Plaintiffs aver that BLM has unlawfully withheld promulgation of humane treatment standards pursuant to the requirements of 5 U.S.C. § 553 in violation of 5 U.S.C. § 706(1). As such, Plaintiffs seek an order compelling BLM to adhere to 5 U.S.C. § 553 in codifying regulations that address the Comprehensive Animal Welfare Program's substantive rules. Plaintiffs also aver that BLM's promulgation of the CAWP Standards without following the requirements of 5 U.S.C. § 553 violates 5 U.S.C. §

706(2)(D) in that it was done without observance of procedure required by law." ECF 043 at p. 5.

The Court concluded that this cause of action "fails for a mixture of failure to state a claim and lack of subject-matter jurisdiction reasons." ECF 048 at p. 10. Specifically, the Court found that Plaintiffs' allegation that BLM has issued its CAWP Standards as unenforceable agency policy does not square with its opposition argument and proposed amendment that those same standards are substantive rules. Either the CAWP Standards as issued are substantive rules and BLM has failed to comply with them or they are BLM policy not subject to formal rulemaking; they cannot be both at the same time." *Id.* at p. 11. Further, "[e]ven if [Plaintiffs] successfully alleged that the CAWP Standards were substantive rules, [Plaintiffs] still fail to state a claim under 5 U.S.C. § 706(1) and the Court lacks subject-matter jurisdiction over the 5 U.S.C. § 706(2)(D) claim." *Id.* This ruling is based upon the Court's conclusion that (1) Section 706(1) applies only to legally required, discrete actions, with Plaintiffs unable to "point to any legal obligation, demand of law, or legislative command that requires BLM to promulgate humane handling standards as substantive rules[,]" and (2) Section 706(2) applies only to final agency actions, and here, no final agency action has occurred. *Id.* at pp. 11-15.

C.      Court's Order as to Second Cause of Action

The FAC avers that BLM abused its discretion and violated the Wild Horses Act by relying on a phased EA for multiple gathers in violation of the Wild Horse Act's immediacy requirement. ECF 038 at pp. 17-18. In the Order, the Court noted that "[t]he FAC does not make clear whether Wild Horse is bringing this cause of action as to all the subsequent gathers conducted on the Antelope and Triple B Complexes pursuant to the 2017 EA or just the 2023 Antelope Complex Gather." ECF 048 at pp. 19-20. Even if Plaintiffs were to provide clarification, they have not averred sufficient facts to "permit the Court to draw the reasonable inference that BLM is liable for the misconduct alleged." *Id.* at p. 20. **"Because additional facts could cure the stated deficiency,"** the Court dismissed the cause of action without prejudice and granted leave to amend. *Id.*

1

2

### D.      Court's Order as to Third Cause of Action

The FAC avers that BLM's decision to rely on a six-year-old EA to support its decision
to gather horses from the Antelope Complex in 2023 without making a Determination of NEPA
Adequacy (DNA) was improper as NEPA and its regulations require BLM to justify its decision
to rely on an existing EA by substantiating its decision with some analysis of adequacy and
documentation that the circumstances or the present action are like those of the prior action. ECF
038 at pp. 3, 18-19. Further, Plaintiffs aver that BLM violated NEPA because it failed to take a
"hard look" to analyze the significant environmental impacts of removing horses from the
Antelope Complex.

The Court ruled that NEPA does not require a DNA "because DNAs are not required by
NEPA nor considered official NEPA documents." ECF 048 at p. 17. Further "[u]nder NEPA,
BLM may utilize the 2017 EA as a basis to conduct the 2023 Antelope Complex Gather where it
adequately addresses the impacts of the gathers over a ten-year period and where there are no
new circumstances, new information, or changes in the gather action or its impacts that were not
analyzed in the 2017 [EA] and that would result 'in significantly different environmental
effects.'" *Id.* at p. 18 (citation omitted). While Plaintiffs "generally allege that it would have
expected a DNA to evaluate 'new circumstances, new information, or changes' it only offers a
vague non-exclusive list of what those new circumstances might include. *Id.* at p. 18.  Further,
"[Plaintiffs] fail to allege that those new circumstances were (1) not examined in the 2017 EA,
and (2) would result in significantly different environmental effects." *Id.* The Court dismissed
the cause of action without prejudice, granting Plaintiffs leave to amend to allege that BLM must
supplement the 2017 EA as required by NEPA. *Id.* The amendment must not be based on BLM's
alleged failure to issue a DNA. *Id.*

The Court did not rule on Plaintiffs' claim that BLM violated NEPA because it failed to
take a "hard look" to analyze the significant environmental impacts of removing horses from the
Antelope Complex.

**E.    Court's Order as to Fourth Cause of Action**

Plaintiffs' FAC avers, as relevant to this instant motion, that "Defendants have interfered with Plaintiffs' protected right under the First Amendment by preventing them from observing and documenting the BLM's gather of wild horses in the Antelope Complex." ECF 038 at p. 19. The Court acknowledged that this claim is not moot because Plaintiffs seek injunctive relief as to future gathers at the Antelope Complex, not just relief specific to now completed gathers. ECF 048 at p. 24. Further, the Court found that the Plaintiffs have alleged "sufficient facts to state a First Amendment viewing access restriction claim as to any future gathers." *Id.* at p. 25. The Court dismissed the cause of action without prejudice and granted leave to amend. *Id.* at p. 26.

## IV.    ARGUMENT

In issuing the May 8, 2024 Order, this Court reached conclusions that appear to be based on a mistaken understanding of Plaintiffs' averred facts. In so doing, the Court failed to apply the appropriate legal standards to Defendants' motion. New evidence from the evidentiary hearing held on August 9, 2023 also should be considered in addressing Plaintiffs' First Cause of Action. Further, discovery has not closed in this matter nor has an administrative record been certified. In the interests of justice and to allow resolution of this case based on its merits, the Order should be set aside.

**A.    First Cause of Action**

In ruling on this cause of action, the Court mistakenly stated that the "FAC lacks any allegation that the CAWP Standards are substantive rules." ECF 048 at p. 10. This is not accurate. The FAC states that the CAWP Standards are a rule that is required to follow the rulemaking procedures of Section 553 of the APA. As only "substantive rules" (also known as "legislative rules") are required to abide by this Section, the Complaint can be inferred to allege that the CAWP Standards are substantive rules. ECF 038 at pp. 16-17.

Additionally, the Court mistakenly concluded that Plaintiffs were improperly averring that the Standards were both substantive rules and unenforceable agency policy. ECF 048 at p. 11 (Plaintiffs "allegation that BLM has issued its CAWP Standards as unenforceable agency

policy does not square with its opposition argument and proposed amendment that those same

standards are substantive rules. Either the CAWP Standards as issued are substantive rules and

BLM has failed to comply with them or they are BLM policy not subject to formal rulemaking;

they cannot be both at the same time.") To clarify, Plaintiffs aver that the CAWP Standards are

substantive rules, but because BLM refuses to recognize that the Standards are substantive rules,

instead wrongly asserting they are policy statements or interpretive rules, BLM has evaded

Section 553's requirements, all in violation of the APA. ECF 038 at pp. 16-17; ECF 043 at pp. 8-

13.

More specifically, Plaintiffs' FAC and Opposition to Defendants' Motion to Dismiss aver

the following facts:

(1) Congress has explicitly authorized the Secretary to "issue such regulations as he

deems necessary for the furtherance of the purposes of [the Wild Horse Act]." 16 U.S.C. § 1336.

(2) Excess horses must be "humanely captured and removed' per the Wild Horse Act's

mandates. 16 U.S.C § 1333(b)(2)(B) & (C).

(3) The Wild Horse Act also provides that helicopter use must be conducted in a

humane manner. *See* 16 U.S.C. § 1338a.

(4) The BLM developed its Comprehensive Animal Welfare Program as "a

proactive program for protecting the welfare of wild horses and burros under the agency's

management and protection." The CAWP Standards for Wild Horse and Burro Gathers were

prepared on June 30, 2015, and the CAWP Standards for Off-Range Corral Facilities,

Transportation, and Adoption/Sale Events were prepared on January 29, 2016. When first

promulgated, these standards were viewed as a 'beta' version, allowing BLM to test them and

determine how to implement them.

(5) The CAWP standards address the BLM's plan for humane handling, including

requirements for trap and temporary holding facility design, capture and handling, transportation,

and care after capture.

(6) In December of 2020, the BLM issued a Permanent Instruction Memorandum

(PIM) to "codif[y]" the use of these standards for all horse gathers and mandate training of the BLM staff, contractors, and partners associated with gather operations. *See* BLM PIM 2021-002 (Dec. 18, 2020), available at https://www.blm.gov/policy/pim-2021-002. The BLM stated that the PIM "establishes a framework to ensure there are standards in place regarding the humane care and handling of animals, as well as a process to verify compliance with those standards. It also provides transparency on BLM's standard operating procedures for humane care and proper handling." *Id.*

(7) In the PIM, the BLM acknowledged "the public has a compelling interest in knowing that animals are well cared for."

(8) In approximately 2020, as addressed in the 2020 PIM, all helicopter gather contracts and off-range corral contracts became required to incorporate the CAWP Standards as specifications for performance.

(9) The CAWP Standards for Wild Horse and Burro Gathers contain over 90 different standards related to transportation, feeding, handling, and more. The CAWP Standards for Off-Range Corral Facilities, Transportation, and Adoption/Sale Events contain over 100 different standards related to transportation, feeding, handling, and more.

(10) The CAWP Standards create numerous mandatory obligations that BLM staff, contractors, and associated partners must follow when removing horses from public lands.

(11) For example, the CAWP Standards for Wild Horse and Burro Gathers address trap site and temporary holding facilities by mandating that "[f]ence panels in pens and alleys must be not less than 6 feet high for horses, 5 feet high for burros, and the bottom rail must not be more than 12 inches from ground level[,]" and "[w]ater must be provided at a minimum rate of ten gallons per 1000 pound animal per day, adjusted accordingly for larger or smaller horses, burros and foals, and environmental conditions, with each trough placed in a separate location of the pen (i.e. troughs at opposite ends of the pen). Water must be refilled at least every morning and evening." As regards capture techniques, "[wild horses and burros] that are roped and tied down in recumbency must be untied within 30 minutes[,]" and "[h]alters and ropes tied to a

[wild horse or burro] may be used to roll, turn, position or load a recumbent animal, but a [wild horse or burro] must not be dragged across the ground by a halter or rope attached to its body while in a recumbent position."

(12) The CAWP Standards for Off-Range Corral Facilities, Transportation, and Adoption/Sale Events contain similar mandatory provisions such as "[t]he side panels of the loading chute must be a minimum of 6 feet high and covered with materials such as plywood or metal without holes that may cause injury[,]" "[s]alt and/or mineral blocks should be provided in holding pens at all times[,]" and "[s]traight deck trailers or stock trailers must be used for transporting [wild horse and burros] to another off-range corral facility, off-range pasture, eco-sanctuary or adoption event. ... Two-tiered or double deck trailers are prohibited. ... Transport vehicles for [wild horse and burros] must have a covered roof containing them such that [wild horse and burros] cannot escape."

(13) When creating regulations to enforce the Wild Horse Act, as enabled through Section 1336 of the Wild Horse Act, the BLM must follow the requirements of the APA's Section 553.

(14) The BLM's CAWP Standards are substantive rules created to implement the Wild Horse Act's humane handling requirements and must be promulgated pursuant to the rulemaking requirements of the APA's Section 553.

(15) The BLM's CAWP Standards, in whole or in part, are substantive rules because they supplement or effect a change in BLM's regulations, create rights, impose obligations, and/or constrain BLM's discretion. See *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014); *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003); *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1320 (D.C. Cir. 1988).

(16) The BLM has unlawfully withheld or unreasonably delayed promulgating CAWP standards pursuant to the requirements of 5 U.S.C. § 553 in violation of 5 U.S.C. § 706(1).

(17) The BLM's promulgation of the CAWP Standards without following the

requirements of 5 U.S.C. § 553 was in violation of 5 U.S.C. § 706(2) in that it was done without observance of procedure required by law.

Additional new evidence also supports Plaintiffs' claim that the CAWP Standards are substantive rules, as revealed at the August 9, 2023 evidentiary hearing. At this hearing, Benjamin Noyes, a wild horse specialist employed by BLM, took the stand. ECF 036 at p. 27. He testified that the CAWP Standards are incorporated into contracts between BLM and contractors. *Id.* at p. 39. BLM utilizes a CAWP team to assess the extent to which the Standards are met. *Id.* at pp. 39, 56. Assessment reports document non-compliance. *Id.* at p. 57. For example, one of the assessment reports addressing gathers at the Antelope Complex found that BLM was in violation of five of the CAWP Standards. *Id.* at p. 59.

Mr. Noyes was asked whether any consequence exists if the Standards are not complied with, and he answered: "If they were completely in non-compliance, I'm not sure of all the ramifications at this point, but there would be some pretty serious ramifications for both contractor, as well as the [BLM] team that is implementing the gather." *Id.* at p. 57. He further testified that he was aware there have been "some serious ramifications taken" in the past. *Id.* Nonetheless, BLM's position is that the Standards are not binding, and it has discretion to either abide by them or not. ECF 40 at p. 19. And, for the Antelope gather, where five standards were found to be in non-compliance, there were no ramifications other than follow-up discussions. ECF 036 at pp. 59-63.

Ruth Thompson, the Nevada State Wild Horse and Burro Program Manager for the BLM Nevada State Office, also testified at the evidentiary hearing. *Id.* at p. 101. She stated that the CAWP Standards apply to all Herd Management Areas; it is not site-specific. *Id.* at p. 109. In a declaration opposing Plaintiffs' request for a temporary restraining order or preliminary injunction, Ms. Thompson affirmed that the CAWP Standards are "enforceable standards into contracts with independent contractors for gather and operation of off-range corrals." ECF 021-1 at p. 6.

In conclusion, the CAWP Standards clearly establish a "binding norm" that "so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion," and as such, it is a substantive rule. *Colwell v. HHS*, 558 F.3d 1112, 1124 (9th Cir. 2009); *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013-14 (9th Cir. 1987). Not only is BLM's discretion limited by the CAWP Standards, but contractors and associated partners also are bound by its provisions. The level of detail is such that, even if reasonable, turns on provision that, even if reasonable, are likely arbitrary, and when an agency bases rules on arbitrary choices, they are legislating. *See Hoctor v. United States Dep't of Agric.*, 82 F.3d 165, 170-71 (7th Cir. 1996).

As regards the Court's ruling that Section 706(1) does not apply because Plaintiffs have not averred a legally required, discrete action, Plaintiffs have stated that the CAWP Standards create rights, impose obligations, and/or constrain BLM's discretion. See *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014); *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003); *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1320 (D.C. Cir. 1988).  Congress delegated responsibility to BLM to implement the Wild Horse Act, with such delegation including responsibility to issue regulations as deemed necessary. See 16 U.S.C. §§ 1331, 1333, 1336. Where any provision of a statute is silent or ambiguous, leaving it to the administrating agency to fill any gaps left, the agency must act "to elucidate [that] specific provision of the statute **by regulation**." *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984) (emphasis added).

Here, the Wild Horse Act is silent and ambiguous as regards the meaning of humane treatment, whether for proper transportation, feeding, and handling or otherwise. It is impossible to interpret the statute as regards this issue without promulgating substantive rules. Congress could have provided standards to address BLM's implementation of human procedures, but it did not. Where Congress has specifically declined to create a standard, an agency cannot implement the statute through interpretative rules. Rather, in such circumstances, the implementing rules are necessarily substantive rules that require adherence to Section 533's procedures. *See Mendoza v.*

1    *Perez*, 754 F.3d 1002, 1022-23 (D.C. Cir. 2014).

2          And, as regards the Court's ruling that Section 706(2) does not apply because there is no

3    final agency action, Plaintiffs stated that BLM's issuance of the 2020 PIM constituted final

4    agency action. Indeed, BLM stated that the PIM codified the Standards.

5          In whole, with this clarification and evidence, Plaintiffs have met Rule 8's requirements

6    for notice pleading, and Defendants have not met their burden pursuant to Rule 12. Moreover, it

7    is premature to dismiss Plaintiffs' First Cause of Action when the administrative record has not

8    yet been certified and discovery remains possible. Triable issues currently present themselves,

9    and justice is not served by dismissing the cause of action without a full exploration of its merits.

10         Plaintiffs therefore ask the Court to rescind, reconsider, or modify the Order issued on

11   May 8, 2024.

          **B.      Second Cause of Action**

12         Plaintiffs ask that the Court's Order requiring filing of a second amended complaint

13   within 30 days of May 8, 2024 be vacated. The Court states that amendment is possible, but that

14   Plaintiffs must aver more than the fact that BLM violates the Wild Horse Act's immediacy

15   requirement when conducting gathers six or more years after adoption of a Gather EA. ECF 048

16   at p. 20 ("While [Plaintiff] correctly points out that the Wild Horses and Burros Act requires

17   BLM to 'immediately' remove excess animals once it determines that removal of excess animals

18   is necessary, it offers only that the 2017 EA is six years old to support that allegation. A single

19   supporting fact falls well short of the facial plausibility pleading standard of Fed. R. Civ. P. 8(a).

20   This bare assertion that BLM violated the immediacy provision by relying on a six-year-old EA,

21   without more, does not permit the Court to draw the reasonable inference that BLM is liable for

22   the misconduct alleged.") Plaintiffs disagree that Rule 8 requires more; however, amendment

23   should not be required until the administrative record has been certified and discovery has

     closed.

24

25   //

26

**C.      Third Cause of Action**

Plaintiffs ask that the Court's Order requiring filing of a second amended complaint within 30 days of May 8, 2024 be vacated. The Order allows for leave to amend, but again, the Court seeks further details regarding "new circumstances, new information, or changes" that BLM should have considered. Plaintiffs disagree that Rule 8 requires more; however, amendment should not be required until the administrative record has been certified and discovery has closed.

In addition, Plaintiffs ask that the Order be modified to address their claim that Defendants violated NEPA when they failed to take a "hard look" to analyze the significant environmental impacts of removing wild horses from the Antelope Complex. This claim is fact-based, focusing on issues raised by the public during the review of the 2017 EA. It requires, at a minimum, an analysis of the administrative record, which has not yet been designated in this case. Because factual disputes exist, a Motion to Dismiss is not appropriate. *See Farmer v. Las Vegas Metro. Police Dep't*, 2018 U.S. Dist. LEXIS 186660, at *7 (D. Nev. Oct. 31, 2018); *Ronpak, Inc. v. Elecs. for Imaging, Inc.*, U.S. Dist. LEXIS 4546, at *14 (N.D. Cal. Jan. 14, 2015). The Order does not address this particular claim.

**D.      Fourth Cause of Action**

Plaintiffs ask that the Court's Order requiring filing of a second amended complaint within 30 days of May 8, 2024 be vacated. Also, Plaintiffs ask for clarification as regards the Court's Order.

The Court recognized that Plaintiffs have a cognizable claim that Defendants have interfered with Plaintiffs' protected right under the First Amendment by preventing them from observing and documenting the BLM's gather of wild horses in the Antelope Complex. Yet, the Court dismissed the cause of action. Plaintiffs ask that the Order be modified to reflect whether this claim needs amendment or, rather, the Court seek to have Plaintiffs remove language related to other First Amendment claims.

1

**V.     CONCLUSION**

2
        For the foregoing reasons, Plaintiffs ask this Court to rescind, reconsider, or modify the

3
May 8, 2024 Order.

4
DATED: June 6, 2024                                    Respectfully submitted,

5
                                                       /s/ Danielle M. Holt
                                                       Danielle M. Holt
6
                                                       (Nevada Bar No. 13152)
                                                       DE CASTROVERDE LAW GROUP
7
                                                       1149 S Maryland Pkwy
                                                       Las Vegas, NV 89104
8
                                                       (702) 222-9999
                                                       danielle@decastroverdelaw.com
9
                                                       /s/ Rae Lovko
10
                                                       Rae Lovko
                                                       (Cal. Bar No. 314898,
11
                                                       admitted pro hac vice)
                                                       GREENFIRE LAW, PC
12
                                                       2748 Adeline Street, Suite A
                                                       Berkeley, CA 94703
13
                                                       (510) 900-9502
                                                       rlovko@greenfirelaw.com
14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 6, 2024, I electronically filed and served the foregoing with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system, which will send notification of this filing to the attorneys of record.

                                          */s/ Jessica San Luis*
                                          Jessica San Luis

Page 1 of 1