DANIELLE M. HOLT
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
Ph (702) 222-9999
Fax (702) 383-8741
danielle@decastroverdelaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, admitted pro hac vice)
JENNIFER RAE LOVKO
(Cal. Bar No. 208855, admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILD HORSE EDUCATION, a non-profit corporation and LAURA LEIGH, individually, | |
| Plaintiffs, | CASE NO. 3:23-cv-00372-MMD-CLB |
| v. | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR RELIEF FROM ORDER AND JUDGMENT** |
| UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs have met the pleadings requirements of Federal Rules of Civil Procedure 8 to sufficiently aver causes of action based on APA Sections 706(1) and 706(2), NEPA, and the First Amendment of the U.S. Constitution. Pursuant to Federal Rule of Civil Procedure 60 and common law, Plaintiffs ask that the Court rescind, reconsider, or modify the Court's May 8, 2024 Order ("Order"), which finds that they did not. ECF 48. Such relief is justified because the Order contains manifest error, does not address key arguments made by Plaintiffs, and did not adhere to the standard of review dictated by Federal Rule of Civil Procedure 12(b). Further, new evidence contradicts assumptions made by the Court in the Order.

## II. ARGUMENT

As stated in Section II of Plaintiffs' Motion for Relief, in addressing Defendants' Motion to Dismiss, the Court is bound by the legal standards for Federal Rules of Civil Procedure 12(b) and Federal Rules of Civil Procedure 8. Based upon these standards, it is not Plaintiffs' burden to demonstrate that no triable issue of fact exists. Instead, Plaintiffs' complaint need only provide simplified notice of their claims, and the Court is to liberally construe the complaint in Plaintiffs' favor. Here, application of the legal standards should lead to the conclusion that Defendants' Motion to Dismiss Plaintiffs' First Cause of Action should be denied. As regards Plaintiffs' Second and Third Causes of Action, it is proper to allow amendment after the administrative record has been certified and discovery has closed, and for the Fourth Cause of Action, amendment should be allowed after clarification of the Order has been provided.

### A. Defendants' Motion to Dismiss Plaintiffs' First Cause of Action Should Be Denied

The Wild Horse Act directs BLM to use "humane treatment" when handling, capturing, and removing horses from public lands. *See* 16 U.S.C § 1333(b)(2)(B) & (C); 43 C.F.R. § 4700.0-5(e). And, Congress has explicitly authorized BLM to "issue such regulations as he deems necessary for the furtherance of the purposes of [the Wild Horse Act]." 16 U.S.C. § 1336. Plaintiffs averred that BLM unlawfully withheld promulgation of humane treatment standards pursuant to the requirements of 5 U.S.C. § 553 in violation of 5 U.S.C. § 706(1). Plaintiffs also

averred that BLM's promulgation of the CAWP Standards without following the requirements of 5 U.S.C. § 553 violates 5 U.S.C. § 706(2)(D) in that it was done without observance of procedure required by law.

### 1. Plaintiffs' Claim Does Not Fail Under APA Sections 706(1)

The Order granted Defendant's motion with prejudice as regards Plaintiffs' Section 706(1) claim, ruling that (1) Plaintiffs did not identify any specific legislative command that required BLM to undergo formal rulemaking, and (2) Plaintiffs did not adequately plead that the CAWP Standards were substantive rules. *See* ECF 48 at pp. 9-13.

#### a. Legislative Command

The Court recognized that agencies are legally obligated to abide by the rulemaking requirements of 5 U.S.C. § 553. *See* ECF 48 at p. 10. Yet, the Court found that Plaintiffs have not shown that BLM failed "to take a *discrete* agency action that it is *required to take*." *Id.* at 11, quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in the original). These are conflicting statements. The *discrete agency action* that BLM is *required to take* is the notice and comment requirements of Section 553 for substantive rules. Thus, the sole question is whether or not the CAWP Standards are substantive rules. If they are, then Section 553 controls.

As addressed in Plaintiffs' Motion for Relief, Plaintiffs have averred sufficient facts to proceed with their claim. In finding that these facts are insufficient, the Order ignored the line of cases cited by Plaintiffs in support of the proposition that an administrative agency can be mandated to engage in rulemaking for a congressionally-established program where Congress has explicitly or implicitly adopted statutory language that is silent or ambiguous with respect to a specific issue. *See* ECF 43 at pp. 9-12, citing e.g., *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984); *Mendoza v. Perez*, 754 F.3d 1002 (2014); *Colwell v. HHS*, 558 F.3d 1112 (9th Cir. 2009), *Hemp Indus. Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003); *Hoctor v. United States Dep't of Agric.*, 82 F.3d 165 (7th Cir. 1996); *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1320 (D.C. Cir. 1988). None of these cases were discussed in the Order, nor was the reasoning distinguished.

The U.S. Supreme Court summarized this proposition as follows:

> "The power of an administrative agency to administer a congressionally created … program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. … Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit.

*Chevron, U.S.A., Inc.*, 467 U.S. at p. 13.

The case of *Mendoza* is instructive. There, the plaintiffs challenged guidance letters issued by the Department of Labor for purposes of administering certain H-2A visa certifications. *See Mendoza*, 754 F.3d at 1007-08. Among the provisions contained in these letters were standards for housing. *See id.* at 1009. The provisions were adopted without notice and comment rulemaking. *See id.* at 1008. The defendants argued that the guidance letters were merely interpretive rules; the Court disagreed, finding that they were substantive rules because they "do more than clarify or remind parties of preexisting duties under" the at-issue statute. *Id.* at 1022. "Rather, they supplement the statute by imposing specific duties on employers seeking certification under the statute." *Id.* The letters were not interpretive rules, because the guidance letters "endeavor[ed] to implement the statute[,]" and as such, they were legislative rules. *Id.* at 1023. The Court also noted that where Congress has delegated legislative authority to an agency, which the agency addresses through issuance of a binding rule, this is "the clearest possible example of a legislative rule." *Id.*, quoting *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 169-70 (7th Cir. 1996).

Here, the CAWP Standards are similarly viewed as legislative or substantive rules. They are binding on the agency and those employed to assist in gather operations. They provide the manner in which the statute's requirement for humane treatment is to be achieved. This conclusion is further bolstered by the new evidence presented in the form of Benjamin Noyes and Ruth Thompson's testimony at the hearing on Plaintiffs' request for a temporary restraining order. *See* ECF 36 at p. 27, 39, 56-57, 101, 109; ECF 21-1 at p. 6.

The *McLouth Steel Products Corp.* opinion also support Plaintiffs' argument. In that case, a corporation sought to exclude waste generated at its facility from the Environmental Protection Agency's (EPA) list of hazardous waste subject to regulation under the Resource Conservation and Recovery Act of 1976. *See McLouth Steel Products Corp.*, 838 F.2d at 1319. The EPA evaluated the waste using its "VHS model," which computed probable contamination levels. *See id.* The model predicted significant levels of hazardous constituents, and the corporation's request was denied. *See id.* The plaintiff argued that the model was in fact a substantive rule that was issued without the notice-and-comment requirements of 5 U.S.C. § 553. *See id.* The EPA responded that the model was a non-binding statement of policy – not a rule. *See id.* at 1319-20. In concluding that the model was a substantive rule to which Section 553 pertains, the Court noted that legislative rules are "of a kind calculated to have a substantial effect on ultimate agency decisions." *Id.* at 1320, quoting *Pickus v. United States Board of Parole*, 507 F.2d 1107, 1112-13 (D.C. Cir. 1974). "If it appears that a so-called policy statement is in purpose or likely effect one that *narrowly limits administrative discretion*, it will be taken for what it is -- a binding rule of substantive law." *Id.*, quoting *Guardian Federal Savings & Loan Ass'n v. FSLIC*, 589 F.2d 658, 666-67 (D.C. Cir. 1978). The fact that the EPA did not consider itself bound by the VHS model "is obviously of little weight. The agency's past characterizations, and more important, the nature of its past applications of the model, are what count." *Id.*

Here, Congress granted BLM statutory authority to manage wild horses, with such management to be humanely done. *See* 16 U.S.C § 1333(b)(2)(B) & (C); 43 C.F.R. § 4700.0-5(e). Plaintiffs ask for the Complaint to be amended to aver that in 2020, BLM issued a Permanent Instruction Memorandum (PIM) to "codif[y]" its CAWP Standards, which standards dictate how humane treatment is to occur. *See* BLM PIM 2021-002 (Dec. 18, 2020), *available at* https://www.blm.gov/policy/pim-2021-002. The PIM also provided "a process to verify compliance with" the standards. *Id.* The CAWP Standards create numerous mandatory obligations that BLM staff, contractors, and associated partners must follow when removing

horses from public lands. As declared by Ruth Thompson, the Nevada State Wild Horse and Burro Program Manager for the BLM the Nevada State Office, the CAWP Standards are "enforceable standards into contracts with independent contractors for gather and operation of off-range corrals." ECF 021-1 at p. 6. In short, the CAWP Standards clearly create a binding norm that limits the actions of BLM and third parties. They are the very definition of substantive or legislative rules, and BLM must adhere to Section 553's rulemaking requirements.

### 2. Plaintiffs' Claim Does Not Fail Under APA Sections 706(2)

Plaintiffs averred that the CAWP Standards were not consummated until issuance of the 2020 PIM. *See* ECF at 43 at p. 7. In support of this, Plaintiffs noted that early publication of the Standards were considered to be in a preliminary "beta" form; the PIM uses the word "codify" and contains an order that mandates training of the Standards for BLM staff, contractors, and other partners; that the PIM required the CAWP standards to be incorporated into all helicopter gather contracts and off-range contracts; that publication of CAWP team assessment reports were not issued until after issuance of the PIM. *See Id.* at p. 7.

Federal Rule of Civil Procedure 12(b) requires the trial court to accept as true all of the factual allegations contained in the pleading and draw all inferences in favor of the plaintiff. *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014). Yet in ruling that Plaintiffs had no viable claim based on Section 706(2), the Order acted as a fact-finder and drew all inferences in favor of BLM to hold that the, "PIM does not mark the consummation of BLM's decision-making process." ECF 048 at p. 14. To reach such a conclusion, the Court had to ignore all of Plaintiffs' claims, including the averment that "[w]hen first promulgated [in 2015 and 2016, the CAWP Standards] were viewed as a 'beta' version, allowing BLM to test them and determine how to implement them." ECF 043 at p. 13. In fact, based on Plaintiffs' allegations, the Standards were not codified until 2020. *See id.*

### 3. New Evidence Exists and Should be Considered

Defendants argue that this Court should not consider the testimony of Benjamin Noyes and Ruth Thompson, who testified at the August 9, 2023 evidentiary hearing in this case because

(1) judicial review of agency action is limited to the administrative record, and (2) Plaintiffs could have cited to the transcripts prior to opposing Defendants' motion on November 27, 2023. First, as noted by Plaintiffs in their Motion for Relief, no administrative record has been certified for this case, and discovery has not closed. Therefore, the Court cannot base its review on the administrative record. *See* ECF 051 at p. 15. Second, pursuant to Court order, the transcripts were not available for release until December 21, 2023. *See* ECF 039. The specific statements that were made and recorded are factual evidence that further supports Plaintiffs' First Cause of Action. To the extent that the Court believed the CAWP Standards were not substantive rules, the testimony of these BLM employees demonstrates otherwise.

### B. Plaintiffs Should Be Allowed to Amend Their Second, Third, and Fourth Causes of Action

Defendants argue that Plaintiffs should have amended their Second, Third, and Fourth Cause of Action by June 7, 2024, pursuant to the Order. Plaintiffs ask that the Court allow amendment of the Second and Third Cause of Action after the administrative record has been certified and discovery has closed and of the Fourth Cause of Action after clarification has been provided. This Court's power to rescind, reconsider, or modify the Order is derived not only from Rule 60 but also from common law. *See City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 886 (9th Cir. 2001). Both sources of authority allow this Court to grant relief to accomplish justice. *See* Fed Rules Civ Proc R 60(b); *City of L.A*, 254 F.3d at 887; *Patapoff v. Vollstedt's, Inc.*, 267 F.2d 863, 865-866 (9th Cir. 1959).

Amendment should be allowed to address facts that are available through the administrative record and discovery. Amendment also will address direction provided in the recent case of *Friends of Animals v. United States BLM*, Civil Action No. 18-2029 (RDM), 2024 U.S. Dist. LEXIS 58642 (D.D.C. Mar. 30, 2024). In that case, the Court addressed BLM's obligations regarding 10-year staged gather plans, ruling that the agency cannot make "a blanket determination that will invariably cover all gathers for the next decade." *Friends of Animals*, 2024 U.S. Dist. LEXIS at p. 4. The Court identified the level of NEPA analysis required for gathers conducted pursuant to a staged gather plan, holding that after a gather achieves AML, the

Bureau must engage in new environmental review, which may include the issuance of a Determination of NEPA Adequacy, before authorizing future gathers. *See id*. at pp. 4, 42, 79. "[E]ach new necessary-to-remove-excess-animals determination [must be based] on current information and meaningful consultation with federal, state and independent experts; and [] not ignore material, new information that comes to [BLM's] attention over time." *Id.* at p. 79.

Here, Plaintiffs have not ignored the deadline for filing a pleading amendment, but rather, Plaintiffs are directly asking for the deadlines to be modified as part of their Motion for Relief. That is, the Motion directly seeks relief from the May 8, 2024 deadlines. To amend prior to the Court's consideration of Plaintiffs' request would not be in the interests of justice or judicial economy as amendment without further instruction by this Court would merely lead to additional challenges, unnecessary motion practice, and subsequent, additional pleading amendment. Plaintiffs would rather amend the complaint only once and only after getting clarification and having issues related to discovery and the administrative record resolved.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs ask this Court to rescind, reconsider, or modify the May 8, 2024 Order.

DATED:     June 27, 2024,                         Respectfully submitted,

/s/ Danielle M. Holt
Danielle M. Holt
(Nevada Bar No. 13152)
DE CASTROVERDE LAW GROUP
1149 S Maryland Pkwy
Las Vegas, NV 89104
danielle@decastroverdelaw.com

/s/ Jennifer Rae Lovko
Jennifer Rae Lovko
(Cal. Bar No. 314898,
admitted pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
rlovko@greenfirelaw.com

**CERTIFICATE OF SERVICE**

I HEREBY certify that on June 27, 2024, I electronically filed and served the foregoing with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ Jessica San Luis
Jessica San Luis