TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

JOSEPH W. CRUSHAM, Trial Attorney (CA Bar No. 324764)
Wildlife & Marine Resources Section
PETER BROCKER, Trial Attorney (NYS Bar No. 5385448)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 307-1145 (Crusham)
Email: joseph.crusham@usdoj.gov
Phone: (202) 305-8636 (Brocker)
Email: peter.brocker@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WILD HORSE EDUCATION, and LAURA LEIGH, individually, | Case No. 3:23-cv-00372-MMD-CLB |
| *Plaintiffs,* | **FEDERAL DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND MOTION TO STRIKE** |
| v. | |
| U.S. DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JOHN RABY, in his official capacity as Nevada State Director of the Bureau of Land Management, | |
| *Federal Defendants.* | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

LEGAL BACKGROUND ................................................................................................... 2

   I. The Wild Free-Roaming Horses and Burros Act ...................................................... 2

BACKGROUND ................................................................................................................. 3

   I. Antelope and Triple B Complexes Gather Plan and Environmental Assessment .................. 3

   II. Procedural History .................................................................................................. 3

   III. Third Amended Complaint ..................................................................................... 5

LEGAL STANDARD ......................................................................................................... 6

   I. Federal Rule of Civil Procedure 12(b)(1) ................................................................. 6

   II. Federal Rule of Civil Procedure 12(b)(6) ............................................................... 6

   III. Federal Rule of Civil Procedure 12(f) ................................................................... 6

ARGUMENT ...................................................................................................................... 7

   I. Plaintiffs' New Claim to Compel BLM to "Assure" Adherence to the Non-Binding
     CAWP Standards Fails as a Matter of Law and Should be Dismissed with Prejudice. .......... 7

     A. Plaintiffs' New Claim Exceeds the Scope of the Court's Leave to Amend ..................... 7

     B. Mandamus is Unavailable Because the APA Provides an Adequate Remedy, and the
       Court Should Analyze Plaintiffs' New Claim under the APA. ........................................ 8

     C. Plaintiffs Cannot State a Claim Under APA Section 706(1) ............................................. 9

     D. Even if Plaintiffs Challenge BLM's Compliance with the CAWP Standards Under
       APA Section 706(2), They Cannot State a Claim. ....................................................... 12

   II. The Court Should Strike the References to Section 1983 and the Supposed Right to
     View "Humane" Gathers from the Third Amended Complaint. ....................................... 13

CONCLUSION ................................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Case**                                                                                                    **Page(s)**

*Alvarado v. W. Range Ass'n,*
  No. 3:22-cv-00249-MMD-CLB, 2024 WL 915659 (D. Nev. Mar. 4, 2024)...........................14

*Am. Horse Prot. Ass'n, Inc. v. Watt,*
  694 F.2d 1310 (D.C. Cir. 1982) ...........................................................................................2

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).............................................................................................................6

*Audubon of Kan., Inc. v. U.S. Dep't of Interior,*
  67 F.4th 1093 (10th Cir. 2023) .......................................................................................8, 9

*Bassiri v. Xerox Corp.,*
  292 F. Supp. 2d 1212 (C.D. Cal. 2003) ..............................................................................6

*Carrico v. City and Cnty. of San Francisco,*
  656 F.3d 1002 (9th Cir. 2011) ............................................................................................8

*Conservation Force v. Salazar,*
  646 F.3d 1240 (9th Cir. 2011) ............................................................................................6

*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010) ..............................................................................................3

*Dawod v. Garland,*
  No. CV 23-3211-MWF, 2023 WL 8605320 (C.D. Cal. Aug. 10, 2023) ..............................8

*DeLeon v. Wells Fargo Bank, N.A.,*
  No. 10-CV-01390-LHK, 2010 WL 4285006 (N.D. Cal. Oct. 22, 2010) ...........................7, 8

*Fantasy, Inc. v. Fogerty,*
  984 F.2d 1524 (9th Cir. 1993) ............................................................................................7

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517 (1994).............................................................................................................7

*Friends of Animals v. Silvey,*
  353 F. Supp. 3d 991 (D. Nev. 2018)...........................................................................2, 3, 13

*Fund for Animals, Inc. v. BLM,*
  460 F.3d 13 (D.C. Cir. 2006) ..............................................................................................2

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
   593 F.3d 923 (9th Cir. 2010) ................................................................. 9, 10, 12

*In Def. of Animals v. U.S. Dep't of Interior*,
   751 F.3d 1054 (9th Cir. 2014) .............................................................................. 9

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
   478 U.S. 221 (1986) ............................................................................................. 9

*Kildare v. Saenz*,
   325 F.3d 1078 (9th Cir. 2003) ............................................................................. 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................................. 6

*Leigh v. Jewell*,
   No. 3:11-cv-00608-HDM-WGC, 2014 WL 31675 (D. Nev. Jan. 3, 2014) .................. 2, 11, 12

*Leigh v. Salazar*,
   No. 3:13-cv-00006-MMD-VPC, 2014 WL 4700016 (D. Nev. Sept. 22, 2014) ...................... 11

*Martin v. Wells FargoBank*,
   2011 WL 13227809 (C.D. Cal. Sept. 26, 2011) ...................................................... 14

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ............................................................................... 6

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) ................................................................................... 9, 10, 12

*Nova Stylings, Inc. v. Ladd*,
   695 F.2d 1179 (9th Cir. 1983) ............................................................................. 8

*Ollier v. Sweetwater Union High Sch. Dist.*,
   735 F. Supp. 2d 1222 (S.D. Cal. 2010) ................................................................ 7

*Ollierv. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ............................................................................... 7

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) ............................................................................. 12

*Paws Up Ranch, LLC v. Green*,
   No. 2:12-cv-01547-GMN-NJK, 2015 WL 4113113 (D. Nev. July 8, 2015) ...................... 7

*Plaskett v. Wormuth*,
    18 F.4th 1072 (9th Cir. 2021) ................................................................. 10

*R.T. Vanderbilt Co. v. Babbitt*,
    113 F.3d 1061 (9th Cir. 1997) ................................................................. 9

*Sternberg v. Warneck*,
    No. 2:23-cv-01466-APG-EJY, 2024 WL 3396144 (D. Nev. July 11, 2024) ........................... 7

*Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*,
    873 F.2d 1221 (9th Cir. 1989) ................................................................. 6

*Tareque v. Bitter*,
    No. 8:24-cv-00535-FWS-ADS, 2024 WL 3914507 (C.D. Cal. Aug. 13, 2024) ....................... 9

*Tran v. Smith*,
    Case No. 1:19-cv-00148-DAD-SAB (PC), 2021 WL 2142622 (E.D. Cal. May 26, 2021) ..... 14

*Vaz v. Neal*,
    33 F.4th 1131 (9th Cir. 2022) ................................................................. 8, 9

*Vietnam Veterans of Am. v. CIA*,
    811 F.3d 1068 (9th Cir. 2016) ................................................................. 10

*W. Radio Servs. Co., Inc. v. Espy*,
    79 F.3d 896 (9th Cir. 1996) .................................................................... 13

*Wild Fish Conservancy v. Jewell*,
    730 F.3d 791 (9th Cir. 2013) .................................................................. 12

**Statutes**

5 U.S.C. § 706(1) ................................................................. 1, 4, 9, 10, 11, 12

5 U.S.C. § 706(2) ................................................................. 1, 4, 9, 12, 13

16 U.S.C. § 1331 .................................................................... 2

16 U.S.C. § 1332(c) ................................................................. 2

16 U.S.C. § 1333(a) ................................................................. 2

16 U.S.C. § 1333(b)(1) .............................................................. 2

16 U.S.C. § 1333(b)(2) .............................................................. 2

16 U.S.C. § 1333(b)(2)(B) ........................................................... 2, 11, 12

42 U.S.C. § 1983 ................................................................. passim

**Rules**

Fed. R. Civ. P. 12(b)(1)..............................................................................................6

Fed. R. Civ. P. 12(b)(6)..............................................................................................6

Fed. R. Civ. P. 12(f)..................................................................................................7

**Regulations**

43 C.F.R. § 4700.0-5(e)..............................................................................................2

43 C.F.R. § 4710.3-1..................................................................................................2

**INTRODUCTION**

Plaintiffs initially challenged the Bureau of Land Management's ("BLM's") Comprehensive Animal Welfare Program ("CAWP") Standards for being issued as non-binding policies, rather than formal rules. The Court dismissed this claim with prejudice, whether pled under Administrative Procedure Act ("APA") Section 706(1) or 706(2), and gave Plaintiffs leave to amend their other three claims. The Court also denied Plaintiffs' motion for reconsideration.

In disregard of the limited leave to amend granted by the Court, Plaintiffs' Third Amended Complaint ("TAC") reasserts a CAWP-based claim under yet another defective legal theory. Plaintiffs now try to use the Mandamus and Venue Act to prevent gathers on the Antelope and Triple B Complexes unless Federal Defendants "can assure" that the CAWP Standards "at a minimum, are regulated and adhered to in their entirety." ECF No. 58 ¶ 101. The claim fails as a matter of law for several reasons. First, mandamus is unavailable because the APA provides an adequate remedy. But regardless, whether under the APA or mandamus act, the Court can compel only legally required, discrete agency action. Plaintiffs admit that the CAWP Standards "are not binding on BLM." *Id.* ¶ 39. Thus, even under Plaintiffs' own logic, BLM's compliance with the CAWP Standards is not legally required and cannot be compelled. Nor do Plaintiffs seek to compel discrete action. Instead, they ask the Court to supervise BLM's implementation of the Wild Free-Roaming Horses and Burros Act's ("Wild Horse Act's") broad, discretionary mandate to humanely gather and remove wild horses. For all these reasons, the Court should dismiss the first claim in Plaintiffs' TAC with prejudice.

Plaintiffs have also failed to amend their First Amendment claim in conformity with the Court's orders. Despite the Court ordering Plaintiffs to remove all references to 42 U.S.C. § 1983 and to remove the theory that they have a right to view "humane" gathers, both remain in the TAC. The Court should strike these holdover allegations so that this claim comports with the Court's orders.

**LEGAL BACKGROUND**

**I.      The Wild Free-Roaming Horses and Burros Act**

In 1971, Congress passed the Wild Horse Act, 16 U.S.C. § 1331 *et seq.*, which directs the Secretary of the Interior to provide for the protection and management of wild horses "in the area where presently found, as an integral part of the natural system of the public lands." *Id.* § 1331. But after only a few years, the wild horse population had grown dramatically, "and action [was] needed to prevent a successful program from exceeding its goals and causing animal habitat destruction." *Am. Horse Prot. Ass'n, Inc. v. Watt*, 694 F.2d 1310, 1316 (D.C. Cir. 1982) (citation omitted). Thus, in 1978, Congress passed amendments to the Wild Horse Act, which gave the Secretary greater authority and discretion to manage and remove excess horses. *Id.* at 1316–18.

Section 3 of the Wild Horse Act directs the Secretary to manage wild horses and burros "to achieve and maintain a thriving natural ecological balance on the public lands." 16 U.S.C. § 1333(a). "The Bureau (as the Secretary's delegate) carries out this function in localized 'herd management areas' ('HMAs')[.]" *Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 15 (D.C. Cir. 2006); *see* 16 U.S.C. § 1332(c); 43 C.F.R. § 4710.3-1. In each HMA, BLM typically establishes an Appropriate Management Level ("AML") range. *See Friends of Animals v. Silvey*, 353 F. Supp. 3d 991, 1008 (D. Nev. 2018) ("BLM is given great deference [] in establishing AMLs…") *aff'd*, 820 F. App'x 513 (9th Cir. 2020). If BLM determines there is an overpopulation of wild horses and burros and that action is necessary to remove them, BLM must immediately act to remove the excess animals to achieve AML. 16 U.S.C. § 1333(b)(2).

The Wild Horse Act specifies that excess wild horses shall be "humanely captured and removed." *Id.* § 1333(b)(2)(B). Regulations define "humane treatment" as "handling compatible with animal husbandry practices accepted in the veterinary community, without causing unnecessary stress or suffering to a wild horse or burro." 43 C.F.R. § 4700.0-5(e). BLM has broad discretion in managing and removing wild horses from public lands. *See* 16 U.S.C. § 1333(b)(1); *Leigh v. Jewell*, No. 3:11-cv-00608-HDM-WGC, 2014 WL 31675, at *5 (D. Nev. Jan. 3, 2014) (definition of "humane" "affords BLM discretion in conducting [] wild horse roundups").

## BACKGROUND

### I.  Antelope and Triple B Complexes Gather Plan and Environmental Assessment

This case centers around a ten-year gather plan for several BLM-managed HMAs in Nevada. In 2017, BLM estimated that the population of wild horses within the Antelope, Antelope Valley, Goshute, Maverick-Medicine, Spruce-Pequop, and Triple B HMAs (collectively, "the Antelope and Triple B Complexes") was "almost 11 times above the low [AML] of 899 wild horses." Decision Record, ECF No. 21-5 at 4.[1] Because gather logistics and efficiencies would make it impossible for BLM to gather this dramatic excess of horses in a single gather, BLM structured its gather plan for the Antelope and Triple B Complexes to allow for a series of gathers and population control measures over ten years. *See, e.g.*, *id.* at 5. BLM completed the 2017 Antelope and Triple B Complexes Gather Plan Environmental Assessment ("2017 EA") to assess the possible environmental effects of the ten-year gather plan and issued a Decision Record adopting the gather plan. A court in this District previously upheld the Decision Record and 2017 EA against Wild Horse Act and National Environmental Policy Act ("NEPA") challenges. *See Friends of Animals,* 353 F. Supp. 3d at 1005–1018.

### II.  Procedural History

Plaintiffs originally filed suit on July 26, 2023. ECF No. 1. A few days later, they filed a Motion for Temporary Restraining Order and Preliminary Injunction seeking to stop BLM's ongoing gathers on the Antelope Complex. ECF No. 10 at 2. On August 9, 2023, the Court held an all-day evidentiary hearing. ECF No. 29. The Court ruled from the bench and denied Plaintiffs' motion. *Id.*; ECF No. 36 at 126:21–142:19.[2]

---

[1]  Also available at: BLM National NEPA Register, DOI-BLM-NV-E030-2017-0010-EA, https://eplanning.blm.gov/eplanning-ui/project/84367/570. The Court may take judicial notice of the Decision Record, 2017 EA, and other items on BLM's website because they are "publicly available" on an official government website, and their accuracy and authenticity are not subject to reasonable dispute. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

[2]  Before last summer's gathers, BLM estimated that there were 8,974 horses across the Antelope Complex, not accounting for the 2023 foal crop. *See* 2023 Antelope Complex-South Wild Horse Gather, BLM, https://www.blm.gov/programs/wild-horse-and-burro/herd-management/gathers-and-removals/nevada-ely-do/2023-antelope (2,122 in the southern portion); Antelope Complex-

On September 14, 2023, Plaintiffs filed a First Amended Complaint ("FAC"). ECF No. 38. They asserted four claims: (1) that BLM violated the APA by issuing the CAWP Standards[3] as non-binding guidance, rather than through notice and comment rulemaking; (2) violation of the Wild Horse Act's command for BLM to "immediately" gather horses; (3) violation of NEPA; and (4) violation of the First Amendment. *Id.* ¶¶ 76–110. Federal Defendants moved to dismiss the FAC. ECF No. 40. Plaintiffs filed an opposition, attaching a proposed Second Amended Complaint. ECF Nos. 43 & 43-1.

On May 8, 2024, reviewing both the FAC and the proposed Second Amended Complaint, the Court granted Federal Defendants' motion to dismiss. ECF No. 48. The Court dismissed Plaintiffs' first claim with prejudice because, under APA Section 706(1), Plaintiffs failed to identify a specific legislative command obligating BLM to issue the CAWP Standards as formal rules and, under APA Section 706(2), because Plaintiffs failed to challenge final agency action. *Id.* at 15. The Court dismissed Plaintiffs' other three claims with leave to amend "the deficiencies stated herein." *Id.* at 26. As relevant to this Motion, the Court held that Plaintiffs' request for compensatory damages under Section 1983 for their First Amendment Claim was "barred." *Id.* at 22–23. The Court ordered Plaintiffs to "ensure all references to § 1983 damages are removed from" any amended complaint. *Id.* at 23. The Court also held that Plaintiffs had failed to establish

---

North Wild Horse Gather, BLM, https://www.blm.gov/programs/wild-horse-and-burro/herd-management/gathers-and-removals/nevada/2023-antelope-complex (6,852 in the northern portion). Thus, despite gathering more than 3,000 horses last summer, *id.*, the Antelope Complex remains well-above its AML range of 427–789 animals. 2017 EA at 123 (reporting AML range for Antelope Complex). BLM therefore anticipates conducting additional gathers in the Antelope Complex under the 2017 EA/Decision Record to reach AML. Moreover, as Plaintiffs allege, BLM currently plans to gather horses from the Triple B Complex beginning on November 1, 2024. ECF No. 58 ¶ 82; *see* Fiscal Year 2025 Tentative Wild Horse and Burro Gather and Fertility Control Schedule as of September 9, 2024, available at: https://www.blm.gov/programs/wild-horse-and-burro/herd-management/gathers-and-fertility-control-operations.

[3] The substance of the CAWP Standards is not pertinent to this Motion. But if the Court would like to review them, Federal Defendants previously filed the relevant standards, which are publicly available and subject to judicial notice. *See* ECF Nos. 40-2 & 40-3; Permanent Instruction Memorandum No. 2021-002, Wild Horse and Burro Comprehensive Animal Welfare Program, BLM, https://www.blm.gov/policy/pim-2021-002 (attaching both CAWP Standards).

1    that there is a "qualified right of access to view 'humane' gathers." *Id.* at 25. Thus, the Court

2    dismissed the First Amendment Claim "should it attempt to proceed on such a theory." *Id.*

3         Plaintiffs moved for reconsideration. ECF No. 51. On August 15, 2024, the Court denied

4    Plaintiffs' motion. ECF No. 55. The Court rejected Plaintiffs' request for "clarification" regarding

5    dismissal of their First Amendment claim, stating that the Court's order was "clear." *Id.* at 7 n.2.

6    The Court explained that its prior order held that while Plaintiffs "state a plausible First

7    Amendment claim based on gather viewing restrictions and that the claim was not moot as to

8    future gathers . . . the claim *needed to be amended* (1) to take out remaining references to and

9    requests for compensatory damages under 42 U.S.C. § 1983, and (2) to remove the theory that

10   Wild Horse has a protected right to view 'humane' gathers." *Id.* (emphasis added).

11   **III.    Third Amended Complaint**

12        On September 16, 2024, Plaintiffs filed the TAC. ECF No. 58. Plaintiffs plead four claims:

13   (1) to compel BLM to "assure" adherence with the CAWP Standards during gathers under the

14   2017 EA; (2) violation of the Wild Horse Act's command that BLM "immediately" gather horses;

15   (3) violation of NEPA; and (4) violation of the First Amendment. *Id.* ¶¶ 95–126.

16        The new first claim is pled under the Mandamus and Venue Act, 28 U.S.C. § 1361. *Id.* ¶¶

17   95–101. Plaintiffs allege that BLM has implemented the 2017 EA "in a manner that violates the

18   Wild Horse Act's mandate that wild horses be treated humanely." *Id.* ¶ 96. More broadly,

19   Plaintiffs claim that BLM "has failed to regulate the humane treatment and handling of wild

20   horses in violation of the Wild Horse Act and APA." *Id.* ¶ 97. Plaintiffs assert that the mandamus

21   statute allows them to "compel a federal officer or agency to perform a duty owed to [P]laintiffs,"

22   and seek a mandate to "prevent[] Defendants from gathering wild horses under the 2017

23   EA/FONSI unless Defendants can assure that BLM's CAWP Standards, at a minimum, are

24   regulated and adhered to in their entirety." *Id.* ¶¶ 100–101. Plaintiffs admit, as they did in the

25   FAC, that the "CAWP Standards are not binding on BLM." *Id.* ¶ 38; *see* ECF No. 38 ¶ 81 (alleging

26   BLM adopted "the CAWP standards as an unenforceable 'agency policy'").

27        Plaintiffs' First Amendment Claim is still pled under Section 1983. *See* ECF No. 58 at 23.

28

Plaintiffs also maintain their request for "compensatory damages for past mental or emotional injury pursuant to 28 [*sic*] U.S.C. § 1983." *Id.* at 25. And Plaintiffs have retained their allegation that they have a "First Amendment Right to view wild horses being treated humanely." *Id.* ¶ 125.

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). "[W]hen a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing jurisdiction." *Bassiri v. Xerox Corp.*, 292 F. Supp. 2d 1212, 1219 (C.D. Cal. 2003), *rev'd and remanded on other grounds*, 463 F.3d 927 (9th Cir. 2006).

### II.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A pleading "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" cannot state a claim. *Id.* (citation omitted). If there is "a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory," the Court must dismiss the complaint under Rule 12(b)(6). *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citation omitted).

### III.    Federal Rule of Civil Procedure 12(f)

Rule 12(f) allows courts to "strike from a pleading an insufficient defense or any

6

redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have "broad discretion in deciding whether to strike allegations in a filing." *Sternberg v. Warneck*, No. 2:23-cv-01466-APG-EJY, 2024 WL 3396144, at *2 (D. Nev. July 11, 2024) (citation omitted). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). Courts exercise their discretion to strike pleadings when "the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Ollier v. Sweetwater Union High Sch. Dist.*, 735 F. Supp. 2d 1222, 1223 (S.D. Cal. 2010) (citation omitted), *aff'd*, 768 F.3d 843 (9th Cir. 2014).

## ARGUMENT

I.   **Plaintiffs' New Claim to Compel BLM to "Assure" Adherence to the Non-Binding CAWP Standards Fails as a Matter of Law and Should be Dismissed with Prejudice.**

   **A.  Plaintiffs' New Claim Exceeds the Scope of the Court's Leave to Amend.**

As an initial matter, Plaintiffs first claim improperly exceeds the scope of the leave to amend granted by the Court. In granting Federal Defendants' prior motion to dismiss, the Court afforded Plaintiffs leave only to "amend the deficiencies stated" therein regarding the second, third, and fourth claims in the FAC. ECF No. 48 at 26. The Court did not grant Plaintiffs leave to plead any additional claims.

"[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken." *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) (collecting cases); *see also Paws Up Ranch, LLC v. Green*, No. 2:12-cv-01547-GMN-NJK, 2015 WL 4113113, at *5 (D. Nev. July 8, 2015) (dismissing claims pled "outside the scope of the Court's leave to amend").

The Court can therefore dismiss or strike Plaintiffs' first claim for exceeding the scope of their leave to amend. But, as explained below, the claim fails as a matter of law. So, even if

Plaintiffs sought leave to plead this new claim, leave to amend would be properly denied on futility grounds. *See Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (stating where amendment is futile, leave to amend is properly denied). Thus, rather than dismissing or striking Plaintiffs' first claim for being pled without leave—which would invite Plaintiffs to file a futile motion for leave to amend—the Court should dismiss the claim with prejudice for the reasons stated below. *See DeLeon*, 2010 WL 4285006, at *4–5 (analyzing sufficiency of improper amendments and granting additional leave to replead them only because "Plaintiffs may be able to allege facts to cure the deficiencies").

### B. Mandamus is Unavailable Because the APA Provides an Adequate Remedy, and the Court Should Analyze Plaintiffs' New Claim under the APA.

Plaintiffs' first claim is pled under the mandamus statute and seeks to compel BLM to "adhere" to the CAWP Standards before conducting gathers under the 2017 EA. ECF No. 58 at 20. But mandamus is unavailable because the APA provides an adequate remedy. For this reason, and because mandamus and APA relief are essentially the same, the Court should analyze Plaintiffs' claim under the APA.

"Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.'" *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (citations omitted). "Courts have indicated that these requirements are jurisdictional." *Dawod v. Garland*, No. CV 23-3211-MWF, 2023 WL 8605320, at *5 (C.D. Cal. Aug. 10, 2023) (collecting cases).

The ability to obtain review under the APA is an adequate remedy that precludes mandamus jurisdiction. *See, e.g.*, *Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1180–82 (9th Cir. 1983) (finding that because the Copyright Act was subject to the APA, "mandamus is no longer available as a basis for review in this area"); *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (finding that APA provided "adequate remedy" for claim to compel action from the Executive Office for Immigration Review, such that review under mandamus statute was unnecessary); *see also Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023)

("When review by other means, such as under the APA, is possible, mandamus isn't available." (citations omitted)).

Plaintiffs' first claim is based on alleged violations of the Wild Horse Act and APA. *See* ECF No. 58 ¶ 97. Wild Horse Act claims are reviewed under the APA. *See In Def. of Animals v. U.S. Dep't of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014). Thus, Plaintiffs cannot proceed under the mandamus statute because they have an adequate remedy available under the APA.

In any event, the standard for reviewing claims under the mandamus statute and APA is essentially the same.[4] *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997) ("Mandamus relief and relief under the APA are in essence the same." (cleaned up)); *see Tareque v. Bitter*, No. 8:24-cv-00535-FWS-ADS, 2024 WL 3914507, at *3 (C.D. Cal. Aug. 13, 2024) (collecting cases). Thus, when a plaintiff pleads a mandamus claim and "there is an adequate remedy under the APA," courts generally "elect[] to analyze the claim under the APA." *R.T. Vanderbilt*, 113 F.3d at 1065; *see Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986) (analyzing mandamus claim under APA because the standards are "in essence" the same); *Vaz*, 33 F.4th at 1135 (where claim was brought under APA and mandamus statute, electing to "analyze [plaintiff's] claim under the APA only, as [plaintiff] has an adequate remedy under the APA"). Thus, the Court should review Plaintiffs' first claim under the APA.

As explained below, whether under APA Section 706(1) or 706(2), Plaintiffs' first claim fails as a matter of law and should be dismissed with prejudice.

### C.  Plaintiffs Cannot State a Claim Under APA Section 706(1).

Section 706(1) allows courts to "compel agency action unlawfully withheld or unreasonable delayed." But a plaintiff can compel agency action "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("*SUWA*"); *see Hells Canyon Pres. Council v. U.S. Forest*

---

[4] If Plaintiffs pled their first claim under the mandamus statute to avoid the same APA-based defects of their prior CAWP claim and the Court's dismissal of that claim with prejudice, this is improper. *See Audubon of Kansas*, 67 F.4th at 1111 n.10 ("Audubon tried and failed to establish a failure-to-act claim under § 706(1). It can't then turn to mandamus relief as an alternative.").

*Serv.,* 593 F.3d 923, 932 (9th Cir. 2010) (noting that legal obligation must be "so clearly set forth that it could traditionally have been enforced through a writ of mandamus").[5]

The "legally required" and "discrete" requirements prevent "undue judicial interference with [agencies'] lawful discretion" and "avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *SUWA*, 542 U.S. at 63, 66. In *SUWA*, the Court held that courts cannot "compel[] compliance with broad statutory mandates," because that would require those courts to manage "compliance with the broad statutory mandate," thereby "injecting the judge into day-to-day agency management." *Id.* at 66–67. One example the Court gave of such a "broad statutory mandate" with which it would be improper to compel compliance was the Wild Horse Act's command that BLM manage wild horses and burros "in a manner that is designed to achieve and maintain a thriving natural ecological balance[.]" *Id.* at 67.

Here, Plaintiffs' claim fails because the result it tries to compel is neither legally required nor discrete. Most glaringly, Plaintiffs seek to compel BLM to "adhere" to its CAWP Standards despite admitting that the "CAWP Standards are not binding on BLM." ECF No. 58 ¶¶ 38, 101. Plaintiffs' admission is not new,[6] and it is consistent with the Court's prior holding that Plaintiffs failed to allege that the CAWP Standards are substantive rules to which BLM would be bound. *See* ECF No. 48 at 11. If BLM is not legally required to comply with the CAWP Standards, there is no "specific, unequivocal command" to enforce. *Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1075 (9th Cir. 2016). Thus, Plaintiffs' new CAWP-based claim fails under Section 706(1)

---

[5] As noted above, these requirements are essentially identical to the conditions necessary for mandamus relief. *See Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021) ("[R]egardless of whether Plaskett's claim is viewed as one under § 1361 or under § 706(1), he was required to plead . . . that the Army had a clear, certain, and mandatory duty . . ."). Thus, even if review of Plaintiffs' claim under the mandamus statute instead of the APA was warranted, the claim would still fail as a matter of law for the reasons explained here.

[6] Plaintiffs' prior CAWP-based claim, which the Court dismissed with prejudice, was based on their displeasure that BLM "adopt[ed] the CAWP standards as an *unenforceable* 'agency policy.'" ECF No. 38 ¶ 81 (emphasis added). Plaintiffs' repackaging of these allegations into yet another defective claim reinforces the futility of any amendment.

for the same reason as the old one—Plaintiffs have again failed to identify a "specific legislative command" legally requiring BLM to take the action they seek to compel. *See* ECF No. 48 at 11–13.[7] Because Plaintiffs must seek to compel legally required *and* discrete action to state a claim under Section 706(1), the Court can end its analysis here.

But if the Court reaches discreteness, Plaintiffs' attempt to compel BLM to "assure" adherence to the CAWP Standards does not seek to compel discrete agency action. The Wild Horse Act's humane handling provision—16 U.S.C. § 1333(b)(2)(B)—"imposes a broad rather than discrete mandate" on BLM, affording it "discretion in conducting" gathers. *Leigh*, 2014 WL 31675, at *5. In other words, the provision could not be enforced by a court "without interference in [BLM's] day-to-day operations." *Id.* Thus, courts in this District—including this one—have rejected Plaintiffs' prior attempts to compel compliance with the humane handling provision, as such claims sought "essentially the same general agency compliance" with the Wild Horse Act's broad mandates that the Supreme Court held improper in *SUWA. See, e.g., Leigh v. Salazar*, No. 3:13-cv-00006-MMD-VPC, 2014 WL 4700016, at *3–5 (D. Nev. Sept. 22, 2014) (finding claim that BLM had failed to "ensur[e] the humane capture and removal of excess wild horses in compliance with the [Act]" did "not amount to a discrete agency action for which judicial review is available[]"); *Leigh*, 2014 WL 31675, at *4–5 (same).

Plaintiffs ostensibly seek a "writ of prohibition" preventing BLM from gathering horses until BLM "can assure . . . adhere[ance]" with the CAWP Standards. ECF No. 58 ¶ 101. But this is a mere repackaging of their prior failed attempts to enforce the Wild Horse Act's humane handling provisions. *Compare id.* ¶ 97 (claiming mandamus is warranted because BLM has violated the "humane treatment and handling" provisions of the Wild Horse Act) *with Leigh*, 2014 WL 4700016, at *5 (finding allegations that "BLM's management of wild horses fail to ensure

---

[7] While the CAWP Standards are not legally binding on BLM, they are agency guidance that BLM follows in its gather operations, including those on the Antelope and Triple B Complexes. Plaintiffs' TAC repeats allegations from prior complaints that BLM "violated" the CAWP Standards in last summer's gathers, ECF No. 58 ¶¶ 91–92, and Federal Defendants maintain that these claims are false. *See, e.g.*, ECF No. 21-1 ¶¶ 14–19, 26 (BLM official explaining that last summer's gathers followed the CAWP Standards).

1  their humane treatment" improperly sought "general agency compliance" with the Wild Horse

2  Act's broad mandates).[8] Put simply, the Court cannot compel BLM to "assure" it "regulate[s] and

3  adhere[s]" to the CAWP Standards to ensure gathers comply with "the Wild Horse Act's mandate

4  that wild horses be handled humanely," ECF No. 58 ¶¶ 95–101, without injecting itself into

5  BLM's day-to-day management of wild horses. *See SUWA*, 542 U.S. at 67.

6       Thus, Plaintiffs' first claim fails as a matter of law because it does not seek to compel

7  legally required, discrete agency action. Because any amendment would be futile, the Court

8  should dismiss this claim with prejudice. *See* ECF No. 48 at 13 (collecting cases explaining that

9  dismissal with prejudice for failure to identify discrete, legally required action is appropriate).

10      **D. Even if Plaintiffs Challenge BLM's Compliance with the CAWP Standards Under APA Section 706(2), They Cannot State a Claim.**

11      Plaintiffs' first claim is pled under the mandamus statute to compel BLM to "adhere" to

12  the CAWP Standards, and thus should be analyzed under APA Section 706(1). But if the claim

13  could be construed to allege—or if Plaintiffs seek leave to amend to allege—that BLM has failed

14  to comply the CAWP Standards in violation of APA Section 706(2), this too would fail.

15      Under Section 706(2), Plaintiffs must challenge final agency action. *Hells Canyon*, 593

16  F.3d at 930. The only final agency actions that Plaintiffs challenge are BLM's 2017 EA and

17  Decision Record. Although Plaintiffs purport to challenge the way BLM has "implemented" the

18  2017 EA, ECF No. 58 ¶ 96, implementation of the 2017 EA—separate and apart from the decision

19  itself—is not final agency action. *See Leigh*, 2014 WL 31675, at *3–4 (holding that "conduct of

20  [] gathers" was not final agency action—only the "decision to conduct a roundup, embodied in

21  the Environmental Assessment" was) (citing *Wild Fish Conservancy v. Jewell*, 730 F.3d 791 (9th

22  Cir. 2013) and *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir. 2006).).

23

24  ---

[8] Indeed, in seeking an order preventing gathers until BLM "can assure" adherence to the CAWP

25  Standards, Plaintiffs mirror the humane handling provision. *See* 16 U.S.C. § 1333(b)(2)(B) ("The Secretary shall cause such number of additional excess wild free-roaming horses and burros to be

26  humanely captured and removed for private maintenance and care for which he determines an adoption demand exists by qualified individuals, and for which he determines he *can assure*

27  humane treatment and care . . ." (emphasis added)). This reinforces that Plaintiffs are improperly attempting to enforce this broad, non-discrete mandate through their new first claim.

28

Plaintiffs' TAC does not allege that the 2017 EA or Decision Record fail to comply with the CAWP Standards. But any such amendment would be futile. Courts "will not review allegations of noncompliance with an agency statement that is not binding on the agency." *W. Radio Servs. Co., Inc. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996). Only agency actions that qualify as "substantive rules" and that have gone through "procedural requirements"–such as being "published in the Federal Register or the Code of Federal Regulations," or being "subject to public notice and comment"—are binding. *Friends of Animals*, 353 F. Supp. 3d at 1005.

Again, Plaintiffs admit that the CAWP Standards are not binding on BLM. ECF No. 58 ¶ 38. Moreover, the Court already found that Plaintiffs had not plausibly alleged that the CAWP Standards are substantive rules, and the basis of Plaintiffs' prior CAWP-based claim was to compel BLM to issue them as substantive rules through notice and comment. Thus, Plaintiffs cannot state a claim under Section 706(2) to challenge whether BLM's 2017 EA and/or Decision Record complied with the CAWP Standards.

****

Accordingly, no matter how it is analyzed, Plaintiffs' new first claim fails as a matter of law. The Court should dismiss it with prejudice just like their prior CAWP-based claim.

## II. The Court Should Strike the References to Section 1983 and the Supposed Right to View "Humane" Gathers from the Third Amended Complaint.

Additionally, under Rule 12(f), the Court should strike allegations in the TAC about Section 1983 and a purported right to view "humane" gathers.

As for Section 1983, the Court held in dismissing the FAC that, if Plaintiffs chose to amend, they "should ensure all references to § 1983 compensatory damages" are removed. ECF No. 48 at 23. The Court noted that—despite conceding the issue—Plaintiffs' proposed Second Amended Complaint still sought such damages. *Id.* (citing ECF No. 43-1 at 26). As for the right to view "humane" gathers, the Court dismissed Plaintiffs' First Amendment claim "should it attempt to proceed on such a theory." *Id.* at 25. And in denying Plaintiffs' reconsideration motion, the Court reiterated that Plaintiffs must remove all references to Section 1983 and "the theory that

[they have] a protected right to view 'humane' gathers." ECF No. 55 at 7 n.2 (providing that the First Amendment claim "needed to be amended" to cure these issues).

In violation of the Court's orders, Plaintiffs included these allegations in the TAC. The First Amendment Claim is still pled under Section 1983, *see* ECF No. 58 at 23, and Plaintiffs maintain their request for "compensatory damages" under Section 1983, *id.* at 25. Plaintiffs also still allege that they have a protected "right to view horses being treated humanely." *Id.* ¶ 125.

Given that the Court has already ruled that these allegations cannot support Plaintiffs' First Amendment claim and has ordered Plaintiffs to remove them from any amended pleading, these are immaterial allegations that "have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Alvarado v. W. Range Ass'n*, No. 3:22-cv-00249-MMD-CLB, 2024 WL 915659, at *4 (D. Nev. Mar. 4, 2024) (citation omitted). Thus, the Court should strike them from the TAC under Rule 12(f). *See, e.g.*, *Tran v. Smith*, Case No. 1:19-cv-00148-DAD-SAB (PC), 2021 WL 2142622, at *2 (E.D. Cal. May 26, 2021) (striking allegations about claim previously dismissed without leave to amend and collecting cases doing the same); *Martin v. Wells Fargo Bank*, SACV 11-0037 AG (MLGx), 2011 WL 13227809, at *3 (C.D. Cal. Sept. 26, 2011) (striking allegations that "should not have reappeared in" new pleading because they had been stricken by prior order).

## CONCLUSION

For these reasons, the Court should dismiss the first claim in Plaintiffs' TAC with prejudice. The Court should also strike allegations in the TAC's First Amendment Claim related to Section 1983 and a supposed right to view "humane" gathers.

Dated: September 30, 2024

Respectfully submitted,
TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Joseph W. Crusham*
JOSEPH W. CRUSHAM, Trial Attorney
(CA Bar No. 324764)

14

Wildlife & Marine Resources Section
Phone: (202) 307-1145
Email: joseph.crusham@usdoj.gov

PETER BROCKER, Trial Attorney
(NYS Bar No. 5385448)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 305-8636
Email: peter.brocker@usdoj.gov

*Attorneys for Federal Defendants*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2024, I electronically filed and served the foregoing with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system, which will send notification of this filing to the attorneys of record.

*/s/ Joseph W. Crusham*
Joseph W. Crusham
Attorney for Federal Defendants
