BRENT M. RESH
(Nev. Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, pro hac vice)
JENNIFER RAE LOVKO
(Cal. Bar No. 208855, pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WILD HORSE EDUCATION, a non-profit corporation and LAURA LEIGH, individually,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>Defendants. | CASE NO. 3:23-cv-00372<br><br>**PLAINTIFFS' OPPOSITION TO FEDEREAL DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND MOTION TO STRIKE** |

**INTRODUCTION**

On May 8, 2024, the Court granted, in part, Defendants' motion to dismiss certain elements of Plaintiffs proposed Second Amended Complaint. Dkt. 48. Thereafter, Plaintiffs filed a Third Amended Complaint. Dkt. 58. In response, Defendants filed the instant partial motion to dismiss the First Cause of Action in its entirety and the Fourth Cause of Action in part. As addressed below, Defendants' motion should be denied as to the First Cause of Action. For the Fourth Cause of Action, Plaintiffs agrees that specific language should be removed.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proving that jurisdiction does exist falls to the party asserting jurisdiction. *See id*. The motion to dismiss should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id*. To withstand a challenge under Rule 12(b)(6), "a complaint must set forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court reviewing a motion to dismiss under Rule 12(b)(6) must "accept[ ] as true all of the factual allegations contained in the complaint and draw[ ] all inferences in favor of the nonmoving party." *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014) (quotation marks omitted). Moreover, a "complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Even if the defendants believes that its version will "prove to be the true one . . . that does not relieve defendants of their obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery." *Id*. Factual disputes are not appropriately addressed through a

1   Motion to Dismiss. *See Farmer v. Las Vegas Metro. Police Dep't*, 2018 U.S. Dist. LEXIS

2   186660, at *7 (D. Nev. Oct. 31, 2018); *Ronpak, Inc. v. Elecs. for Imaging*, Inc., U.S. Dist. LEXIS

3   4546, at *14 (N.D. Cal. Jan. 14, 2015).

4          If a court concludes that a motion to dismiss should be granted, but that the complaint can

5   be amended to cure a deficiency, leave to amend shall be freely given. *See Swafford v. IBM*, 383

6   F. Supp. 3d 916, 926 (N.D. Cal. 2019); Fed. R. Civ. Proc. 15(a)(2). Such leave can be granted

7   "even if no request to amend the pleading was made, unless [the court] determines that the

8   pleading could not possibly be cured by the allegation of other facts." *Id.*

9                                                **ARGUMENT**

10  **A.  With their First Cause of Action, Plaintiffs seek a writ ordering BLM's compliance with
       a mandatory duty under the Wild Horse Act.**

11          The First Cause of Action in Plaintiffs' Third Amended Complaint asks the Court to issue

12  a writ of mandamus ordering Defendants to comply with the mandatory language of the Wild

13  Horse Act itself, which provides: "The Secretary shall cause such number of additional excess

14  wild free-roaming horses and burros to be humanely captured and removed . . ."  16 U.S.C.

15  1333(b)(2)(B). "[H]umane treatment" is defined as "handling compatible with animal husbandry

16  practices accepted in the veterinary community, without causing unnecessary stress or suffering

17  to a wild horse or burro." 43 C.F.R. § 4700.0-5(e). "Accepted animal husbandry practices are

18  those outlined in textbooks on the subject." 51 F.R. 7410. "Inhumane treatment" is defined as

19  "any intentional or negligent action or failure to act that causes stress, injury, or undue suffering

20  to a wild horse or burro and is not compatible with animal husbandry practices accepted in the

21  veterinary community." 43 C.F.R. § 4700.0-5(f). Malicious treatment occurs through intentional

22  acts that demonstrates a deliberate disregard for the well-being of wild horses. *See Mountain

23  States Legal Found. v. Hodel*, 799 F.2d 1423, 1425 (10th Cir. 1986). "Such acts include, but are

24  not limited to, unauthorized chasing, pursuing, herding, roping, or attempting to gather or catch

25  wild free-roaming horses and burros." *Id.*; *see also* 1984 43 C.F.R. § 4700.0-5(k); 51 F.R. 7410.

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Plaintiffs' allegations, if accepted as true, establish that the Bureau of Land Management (BLM) has acted negligently or intentionally in its repeated, inhumane treatment of wild horses during gathers at the Antelope and Triple B Complexes. Dkt. 58, pp. 18-20. Indeed, there can be no doubt that BLM's treatment is not been compatible with animal husbandry practices accepted in the veterinary community. *Id.* In addition, BLM has violated its own, internal standards for humane handling – the Comprehensive Animal Welfare Program (CAWP) Standards – during gathers in the Antelope and Triple B Complexes. Dkt. 58, pp. 18-19. This serves as further evidence that BLM's treatment is not compatible with animal husbandry practices accepted in the veterinary community. *Id.*, p. 19. Not only was the Davis School of Veterinary Medicine involved in the development of the CAWP Standards, but also, violation of the Standards goes against humane treatment policies of the American Veterinary Medical Association. *Id.*

Because BLM has been and will continue to treat wild horses inhumanely during gathers in the Antelope and Triple B Complexes, Plaintiffs seek a writ of mandamus preventing Defendants from gathering wild horses unless Defendants can assure that BLM's CAWP Standards, at a minimum, are regulated and adhered to in their entirety. Dkt. 58, pp. 19-20. Plaintiffs chose the CAWP Standards because they are BLM's apparent attempt to implement its mandatory duty under the Wild Horse Act, but a court order requiring BLM to comply with the Wild Horse Act's mandate on its face would suffice as well. *Id.*

This cause of action differs from the claim dismissed by the Court earlier this year. *See* Dkt. 38, Plaintiffs' First Amended Complaint, p. 16-17. To be sure, according to Defendants, Plaintiffs previously asserted "that BLM violated the [Administrative Procedure Act] by issuing the [Comprehensive Animal Welfare Program] Standards as non-binding guidance, rather than through notice and comment rulemaking." Dkt. 59, p. 4. The parties, therefore, agree that Plaintiffs' Third Amended Complaint alleges a new—but related—cause of action, reflecting their renewed effort to obtain judicial review of BLM's continued mistreatment of wild horses and burros during gather operations. The Court's May 8, 2024, order did not address whether

new causes of action could be included in Plaintiffs' Third Amended Complaint. To the extent Plaintiffs have erred by not seeking leave to amend their complaint to include this new cause of action, they do so simultaneously with the filing of this Opposition to Defendants' Partial Motion to Dismiss.

**B. Mandamus is appropriate here, as the Wild Horse Act clearly and certainly prescribed BLM a mandatory duty to gather wild horses and burros humanely.**

"Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.'" *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (citations omitted). "Courts have indicated that these requirements are jurisdictional." *Dawod v. Garland*, No. CV 23-3211-MWF, 2023 WL 8605320, at *5 (C.D. Cal. Aug. 10, 2023) (collecting cases).In determining whether a defendant owes a mandatory, non-discretionary duty, courts often engage in statutory and regulatory construction. *See Knuckles v. Weinberger*, 511 F.2d 1221 (9th Cir. 1975); *Workman v. Mitchell*, 502 F.2d 1201, 1205 (9th Cir. 1974). "In interpreting statutes, [courts] observe the 'cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 965 (9th Cir. 2013) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

The Wild Horse Act states that during gather operations, BLM must humanely capture and remove excess horses. 16 U.S.C. 1333(b)(2)(B). Nothing is ambiguous in this regard. Defendants argue that the duty to treat horses humanely is not discrete or certain, however, and thus, it cannot be enforced.[1]  Plaintiffs disagree.

---

[1] Defendants cite to *Leigh v. Jewell*, No. 3:11-cv-00608-HDM-WGC, 2014 U.S. Dist. LEXIS 625 (D. Nev. Jan. 3, 2014). In that case, the Court found that the definition of humane and inhumane, as provided in BLM's regulations, are "not sufficiently specific" to allow the Court's enforcement. *See Leigh*, 2014 U.S. Dist. LEXIS at *14. No analysis is provided for this conclusion, and the facts of that case did not involve allegations that BLM's treatment was not compatible with animal husbandry practices accepted in the veterinary community. The case also did not address language in the Federal Register indicating that

In 1981, BLM's regulations defined "humane procedure" to mean "kind and merciful treatment, without causing unnecessary stress or suffering to the animal." 1981 43 CFR 4700.0-5(m). "Inhumane treatment" was defined to mean "causing physical stress to an animal through any harmful action or omission that is not compatible with standard animal husbandry practices; causing or allowing an animal to suffer from a lack of necessary food, water or shelter; using any equipment, apparatus, or technique during transportation, domestication or handling that causes undue injury to an animal; or failing to treat or care for a sick or injured animal." *Id.* at (o). In 1986, BLM changed these definitions to their current form. See 51 FR 7410.

In responding to public comment for the current definitions, BLM stated:

Several comments objected to the proposed definition of "humane treatment," which required that handling be consistent with "standard animal husbandry practices." Because no specific group of husbandry practices can be presented as a "standard," the word has been replaced in the final rulemaking with the phrase "accepted by the veterinary community." Accepted animal husbandry practices are those outlined in textbooks on the subject. …

Another comment stated that "stress," referred to in the definition, is undefined. In this and all other cases where common words or expressions are used, the ordinary dictionary definition is intended to be applied.

Several comments addressed the definition of "inhumane treatment." Some stated a preference for the definition in the existing regulations;, others stated that requiring the treatment to be intentional is too restrictive, and that it should be defined to include inflicting pain and suffering. The word "death" has been replaced in the definition in the final rulemaking with "undue suffering", in response to one of the comments, and to allow the authorized officer to destroy animals in appropriate circumstances. The definition has also been expanded to include negligent as well as intentional behavior, and the word "standard" is replaced for the reasons stated above. However, the definition in the existing regulations is not retained because it may be too restrictive, in that it includes a specific list of proscribed acts or omissions without stating clearly that other acts or omissions may constitute inhumane treatment.

*Id.* This history demonstrates that the words used in the current regulations are intended to be

---

veterinary textbooks can be relied upon in determining what is inhumane or humane. Accordingly, the case is not binding on this Court. *See Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Eds., Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("[w]hen an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises").

used as applied in an ordinary dictionary, and the specific acts or omissions addressed by the regulations include those accepted by the veterinary community, as outlined in textbooks.

The regulations now state that "humane treatment" is "handling compatible with animal husbandry practices accepted in the veterinary community, without causing unnecessary stress or suffering to a wild horse or burro." 43 C.F.R. § 4700.0-5(e). "Inhumane treatment" is defined as "any intentional or negligent action or failure to act that causes stress, injury, or undue suffering to a wild horse or burro and is not compatible with animal husbandry practices accepted in the veterinary community." 43 C.F.R. § 4700.0-5(f).

None of these words are either so ambiguous or so broad as to make BLM's duty unclear. If Plaintiffs can demonstrate that BLM has engaged in inhumane treatment by negligently or intentionally causing wild horses stress, injury, or undue suffering that is not compatible with animal husbandry practices accepted in the veterinary community, then these regulations should be enforceable through a writ of mandamus. Plaintiffs suggest that court-order compliance with BLM's own CAWP Standards be part of the remedy because BLM already has established that they are accepted in the veterinary community. Dkt. 58, p. 19. However, even if these Standards are not part of the remedy, a writ should still issue mandating that BLM humanely capture and remove wild horses and burros, as required by the Wild Horse Act, 16 U.S.C § 1333(b)(2)(B) & (C).

**C.  Plaintiffs removed their administrative challenges to BLM's Comprehensive Animal Welfare Program, as no remedy is available to them under the APA.**

Plaintiffs do not believe there is any other adequate remedy besides the issuance of a writ. Defendants ask the Court to dismiss Plaintiffs' First Cause of Action because it fails under the Administrative Procedure Act, § 706. Plaintiffs understand that this Court already decided that Section 706(1) will not compel BLM to adopt its Comprehensive Animal Welfare Program (CAWP) Standards through notice and comment rulemaking. The Court has dismissed this claim, and it does not appear in their Third Amended Complaint. Similarly, Plaintiffs understand

the Court dismissed Plaintiffs' claims challenging the CAWP Standards under APA, Section 706(2) because it also held that BLM's adoption of its CAWP Standards is not reviewable as final agency action. Plaintiffs lost these claims under the APA, which is why they seek relief through a writ of mandamus as a last resort.

**D.  Plaintiffs do not oppose Defendants' Motion to Strike.**

Through inadvertence and mistake, Plaintiffs failed to remove two of several references to damages and one reference to the right to view animals being treated humanely, as required by the Court's orders, Dkts. 48, 55. Plaintiffs, therefore, do not oppose Defendants' motion to strike these provisions from their Third Amended Complaint and have removed them from their proposed Fourth Amended Complaint, filed herewith.

DATED:  October 15, 2024,                    Respectfully Submitted,


                                             */s/ Jessica L. Blome*
                                             Jessica L. Blome
                                             (Cal. Bar No. 314898, pro hac vice)
                                             Jennifer Rae Lovko
                                             (Cal. Bar No. 208855, pro hac vice
                                             GREENFIRE LAW, PC
                                             2748 Adeline Street, Suite A
                                             Berkeley, CA 94703
                                             (510) 900-9502
                                             jblome@greenfirelaw.com
                                             rlovko@greenfirelaw.com


                                             */s/ Brent M. Resh*
                                             Brent M. Resh
                                             (Nevada Bar No. 14940)
                                             BRENT RESH LAW, PLLC
                                             2401 La Solana Way
                                             Las Vegas, NV 89102
                                             (702) 781-6903
                                             brent@brentreshlaw.com


                                             *Attorneys for Plaintiffs*