TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

JOSEPH W. CRUSHAM, Trial Attorney (CA Bar No. 324764)
Wildlife & Marine Resources Section
PETER BROCKER, Trial Attorney (NYS Bar No. 5385448)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 307-1145 (Crusham)
Email: joseph.crusham@usdoj.gov
Phone: (202) 305-8636 (Brocker)
Email: peter.brocker@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WILD HORSE EDUCATION, and LAURA LEIGH, individually,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JOHN RABY, in his official capacity as Nevada State Director of the Bureau of Land Management,<br><br>*Federal Defendants.* | Case No. 3:23-cv-00372-MMD-CLB<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINITFFS' MOTION FOR LEAVE TO AMEND** |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

   I. The Court Should Dismiss Plaintiffs' First Claim with Prejudice Because Any Amendment Would be Futile. .............................................................................................. 2

   II. The Court Should Deny Plaintiffs' Motion for Leave to Amend Because of Futility, Undue Delay, Repeated Failure to Cure Deficiencies, and Prejudice. .................... 6

CONCLUSION ..................................................................................................................... 8

**TABLE OF AUTHORITIES**

**CASE** PAGE(s)

*Audubon of Kansas, Inc. v. U.S. Dep't of Interior*,
   67 F.4th 1093 (10th Cir. 2023) ............................................................................................... 3

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
   593 F.3d 923 (9th Cir. 2010) .................................................................................................. 3

*Leigh v. Jewell*,
   No. 3:11-cv-00608-HDM-WGC, 2014 WL 31675 (D. Nev. Jan. 3, 2014) ........................... 5, 6

*Leigh v. Salazar*,
   No. 3:13-cv-00006-MMD-VPC, 2014 WL 4700016 (D. Nev. Sept. 22, 2014) ............. 1, 4, 5, 6

*McCart-Pollak v. On Demand Direct Response LLC*,
   No. 2-20-cv-01624-GMN-VCF, 2023 WL 1879683 (D. Nev. Feb. 9, 2023) ..................... 6, 7, 8

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) .......................................................................................................... 3, 4, 5, 6

*Nova Stylings, Inc. v. Ladd*,
   695 F.2d 1179 (9th Cir. 1983) ................................................................................................. 3

*On Demand Direct Response, LLC v. McCart-Pollack*,
   No. 2:15-cv-01576-MMD-VCF, 2016 WL 5796858 (D. Nev. Sept. 30, 2016) ..................... 6, 7

*Plaskett v. Wormuth*,
   18 F.4th 1072 (9th Cir. 2021) .................................................................................................. 3

*Spindler v. City of Los Angeles*,
   No. CV 16-5655-JLS(E), 2019 WL 13032141 (C.D. Cal. Feb. 14, 2019) .............................. 8

*Wild Horse Educ. v. U.S. Dep't of Interior*,
   No. 3:23-cv-00372-LRH-CLB, 2024 WL 2060272 (D. Nev. May 8, 2024) .......................... 7

**STATUTES**

16 U.S.C. § 1333(b)(2)(B) ............................................................................................................ 4

**REGULATIONS**

43 C.F.R. § 4700.0–5(e) ............................................................................................................... 5

Federal Defendants reply to Plaintiffs' Opposition (ECF No. 64) to Federal Defendants' Partial Motion to Dismiss/Motion to Strike ("MTD/MTS") (ECF No. 59) and oppose Plaintiffs' Motion for Leave to File Fourth Amended Complaint (ECF No. 63).

## INTRODUCTION

Plaintiffs' approach in opposing Federal Defendants' MTD/MTS is familiar. Unable to rebut Federal Defendants' arguments showing that their improperly pled mandamus claim fails as a matter of law, Plaintiffs attempt to shift theories and modify their claim. This tactic failed in opposing Federal Defendants' first motion to dismiss, and the Court should find it unsuccessful here as well.

First, Plaintiffs cannot distinguish the law cited by Federal Defendants showing that Plaintiffs' mandamus claim fails as a matter of law. So, they try to slightly modify the claim to no longer seek to enforce BLM's non-binding welfare standards, but to compel BLM to comply with the Wild Horse Act's humane handling provisions. This does not save Plaintiffs' claim. The Court still lacks jurisdiction under the mandamus statute because Plaintiffs have an adequate remedy under APA Section 706(1). And either way, whether analyzed under the mandamus statute or Section 706(1), Plaintiffs' claim fails because it does not seek to compel discrete action. In a case involving one of the Plaintiffs here, this Court held that "ensuring the humane capture and removal of excess wild horses in compliance with the Wild Horse Act [] does not amount to a discrete agency action for which judicial review is available under § 706(1)." *Leigh v. Salazar*, No. 3:13-cv-00006-MMD-VPC, 2014 WL 4700016, at *5 (D. Nev. Sept. 22, 2014). Plaintiffs do not address this decision, much less offer any basis for the Court to depart from its prior reasoning.

Second, Plaintiffs cannot distinguish the law cited by Federal Defendants showing that— because the Court gave them leave to amend only the deficiencies in their second, third, and fourth claims—it was improper for them to plead their new first claim. So, along with their Opposition, Plaintiffs have also filed a belated Motion for Leave to Amend. While the proposed amendment does remove the Section 1983 and "right to view humane gather" allegations—

which Plaintiffs concede should be stricken—it also maintains and modifies their new mandamus claim. On top of futility, the Court should also deny leave because Plaintiffs have unreasonably delayed in seeking to assert this claim, which is not based on new factual allegations and could have been asserted as soon as last July in the original complaint. Allowing Plaintiffs to file what would be their fifth complaint would also prejudice Federal Defendants and unduly delay the resolution of this case.

Thus, Plaintiffs' improperly pled mandamus claim fails as a matter of law and should be dismissed with prejudice. The Court should grant Federal Defendants' MTD/MTS, order Plaintiffs to refile with the Section 1983 and "right to view humane gather" allegations removed, and otherwise deny their Motion for Leave to Amend.

## ARGUMENT

**I.    The Court Should Dismiss Plaintiffs' First Claim with Prejudice Because Any Amendment Would be Futile.**

The first claim in Plaintiffs' Third Amended Complaint ("TAC") is pled under the mandamus act to "prevent[] Defendants from gathering wild horses under the 2017 EA/FONSI unless Defendants can assure that BLM's [Comprehensive Animal Welfare Program ("CAWP")] Standards, at a minimum, are regulated and adhered to in their entirety." ECF No. 58 ¶¶ 100–101. In response to Federal Defendants arguing that the non-binding nature of the CAWP Standards dooms this claim, Plaintiffs try to shift theories. In their Opposition, they assert that the claim in the TAC "asks the Court to issue a writ of mandamus ordering Defendants to comply with" the humane handling provision of the Wild Horse Act. *See* ECF No. 64 at 3. The claim does not directly ask for this—it focuses on the CAWP Standards. In any event, Federal Defendants explained in their initial brief that by seeking to compel compliance with the CAWP Standards, Plaintiffs were in essence seeking to enforce the Wild Horse Act's humane handling provision, which this Court previously found would be improper. For those reasons, and as explained below, Plaintiffs' attempt to recast their claim as one squarely seeking to compel compliance with the Wild Horse Act's humane handling provision—including the attempt to

2

replead it as such in the proposed Fourth Amended Complaint—fails. The Court should dismiss this claim with prejudice.

First, as shown in Federal Defendants' initial brief, the Court lacks jurisdiction under the mandamus act because Plaintiffs have an adequate remedy available to them under the APA. ECF No. 59 at 14–15. Plaintiffs do not address any of the authority cited by Federal Defendants and appear to conflate having an "adequate remedy" available to them with having a viable claim. *See* ECF No. 64 at 7–8. That Plaintiffs cannot state a specific claim viable under the APA does not mean that they have "no adequate remedy" under the APA such that the Court may exercise mandamus jurisdiction. Because the APA makes available the *type* of claim that Plaintiffs attempt to bring—compelling discrete, required agency action—mandamus is unavailable. *See Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1182 (9th Cir. 1983) ("The *availability* of review through the [APA] . . . is an adequate remedy precluding mandamus jurisdiction.) (emphasis added)). In other words, Plaintiffs' inability to state an APA claim does not mean they can "turn to mandamus relief as an alternative." *See Audubon of Kansas, Inc. v. U.S. Dep't of Interior,* 67 F.4th 1093, 1111 n.10 (10th Cir. 2023).

As explained in Federal Defendants' initial brief, because the Court lacks jurisdiction under the mandamus act, it should review Plaintiffs' claim under APA Section 706(1).[1] ECF No. 59 at 15. Plaintiffs do not respond to this argument, and they use the mandamus standard in their Opposition. ECF No. 64 at 5. This is ultimately irrelevant because "the showing required to support a request for an order under § 706(1) compelling an agency to take a discrete action mirrors the showing that is required to obtain mandamus-type relief." *Plaskett v. Wormuth*, 18 F.4th 1072, 1081-82 (9th Cir. 2021). Thus, under either the mandamus statute or APA Section 706(1), Plaintiffs can succeed only if they seek to compel a legally required *and* discrete agency action. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 66 (2004) (*SUWA*) (noting that the "legally required" and "discrete" limitations on Section 706(1) claims were "derived" from "the

---

[1] Plaintiffs disavow any APA Section 706(2) claim in their Opposition. *See* ECF No. 64 at 7–8.

3

|   |   |
|---|---|
| 1 | traditional limitations upon mandamus"). |
| 2 | Federal Defendants demonstrated that the non-binding nature of the CAWP Standards |
| 3 | doomed the first claim in the TAC because BLM's "adherence" to the standards was indisputably |
| 4 | not legally required. ECF No. 59 at 15–18. Federal Defendants also showed that by attempting |
| 5 | to compel BLM to "adhere" to the CAWP standards, Plaintiffs are trying to enforce the Wild |
| 6 | Horse Act's generalized humane handling provisions, 16 U.S.C. § 1333(b)(2)(B), and thus do |
| 7 | not seek to compel discrete action. *Id.* at 11–12. |
| 8 | Now, Plaintiffs confirm that their goal is to compel compliance with the Wild Horse |
| 9 | Act's humane handling provision, and they seek leave to plead a new version of this claim |
| 10 | making this clearer. *See* ECF No. 64 at 5–7; ECF No. 63 at 28 ¶¶ 94–99. Federal Defendants do |
| 11 | not contest that the Wild Horse Act requires BLM's compliance with the humane handling |
| 12 | provisions. But while Plaintiffs' shift in theories may have helped them overcome the "legally |
| 13 | required" prong, it does nothing to help them show discreteness. |
| 14 | As explained in Federal Defendants' initial brief, over 10 years ago, this Court considered |
| 15 | Plaintiff Laura Leigh's claim which sought to compel "compliance with the Wild Horse Act's |
| 16 | mandate that BLM ensure humane gathers and removals of excess wild horses." *Leigh*, 2014 WL |
| 17 | 4700016, at *4–5. The Court examined *SUWA*, including that it offered "the following example |
| 18 | of an improper suit to compel general agency compliance: 'a plaintiff might allege that the |
| 19 | Secretary had failed to manage wild free-roaming horses and burros in a manner that is designed |
| 20 | to achieve and maintain a thriving natural ecological balance.'" *Leigh*, 2014 WL 4700016, at *4 |
| 21 | (quoting *SUWA*, 542 U.S. at 67). The Court found that Ms. Leigh's allegations in that case—that |
| 22 | "BLM's management of wild horses fails to ensure their humane treatment"—"mirror[ed] the |
| 23 | cited example" from *SUWA*. *Id.* at *5. Thus, the Court held that "[t]he action that Plaintiff |
| 24 | contends BLM has failed to take—ensuring the humane capture and removal of excess wild |
| 25 | horses in compliance with the Wild Horse Act—does not amount to a discrete agency action for |
| 26 | which judicial review is available under § 706(1)." *Id.* |
| 27 | Plaintiffs do not address the Court's prior decision. Instead, Plaintiffs argue that because |
| 28 |   |

4

BLM's regulations state that humane treatment means "compatible with animal husbandry practices accepted in the veterinary community," BLM's duty is discrete enough to be "enforceable through a writ of mandamus." *See* ECF No. 64 at 5–7.

The statutory and regulatory definitions of "humane treatment" are broad and afford BLM discretion. *See Leigh v. Jewell*, No. 3:11-cv-00608-HDM-WGC, 2014 WL 31675, at *5 (D. Nev. Jan. 3, 2014) ("[T]he words 'humane' and 'inhumane,' as defined and used in the statute and regulations impose[] a broad rather than discrete mandate.").[2] And even if the Court accepted Plaintiffs' arguments, simply compelling BLM to observe accepted animal husbandry practices, in a vacuum, would be meaningless without application of those standards to a particular gather operation. Thus, the Court would have to improperly encroach on BLM's lawful discretion in order to examine whether—across the thousands of horses that BLM gathers from the Antelope and Triple B Complexes—BLM's treatment of each horse is "compatible with animal husbandry practices accepted in the veterinary community." 43 C.F.R. § 4700.0–5(e); *see SUWA*, 542 U.S. at 66 ("principal purpose" of limitations on 706(1) claims "is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve").

The question is not whether Plaintiffs could "demonstrate that BLM has engaged in inhumane treatment" in a specific instance. ECF No. 64 at 7. Rather, aside from encroaching on the agency's discretion, the problem with seeking "general agency compliance" with sweeping congressional mandates like the humane handling requirement is that it would "inject[] the judge into day-to-day agency management." *Leigh*, 2014 WL 4700016, at *4 (quoting *SUWA*, 542 U.S.

---

[2] Plaintiffs try to distinguish this decision which rejected another attempt by Ms. Leigh to compel compliance with the humane handling provision. *See* ECF No. 64 at 5 n.1. Plaintiffs' argument that the court there did not consider that BLM's regulations refer to standards in the veterinary community fails—the court quoted from these very regulations. *See id.*; *Leigh,* 2014 WL 31675, at *5. Moreover, Plaintiffs' assertion that the case "did not involve allegations that BLM's treatment was not compatible with animal husbandry practices accepted in the veterinary community," is incorrect. ECF No. 64 at 5 n.1. Just like here, Ms. Leigh cited the regulations mentioning "animal husbandry practices accepted in the veterinary community," and alleged that BLM was violating them. *See* Case No. 3:11-cv-00608-HDM, ECF No. 113 ¶¶ 39–49.

at 67); *Leigh,* 2014 WL 31675, at *5 (finding humane definitions "in the statute and regulations" were "not sufficiently specific that it could be enforced by the courts *without interference in defendants' day-to-day operations*" (emphasis added)). Put simply, to do what Plaintiffs request—issue an order "mandating that BLM humanely capture and remove wild horses and burros[,]" ECF No. 64 at 7—the Court would need to conduct "pervasive oversight" over BLM's gather operations. *See Leigh*, 2014 WL 4700016, at *4 (quoting *SUWA*, 542 U.S. at 67). This is precisely what *SUWA* prohibits.

Accordingly, Plaintiffs' attempt to compel compliance with the Wild Horse Act's humane handling provision fails because ensuring the humane capture and removal of excess wild horses in compliance with the Wild Horse Act is not discrete agency action. Given that Plaintiffs have repeatedly tried to assert different claims based on the humane handling provision—including one already dismissed with prejudice—the Court should dismiss this new claim with prejudice. Leave to amend would be futile and, as explained in more detail below, amendment would also unduly delay these proceedings and prejudice Federal Defendants.

**II.    The Court Should Deny Plaintiffs' Motion for Leave to Amend Because of Futility, Undue Delay, Repeated Failure to Cure Deficiencies, and Prejudice.**

"[C]ourts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile." *On Demand Direct Response, LLC v. McCart-Pollack*, Case No. 2:15-cv-01576-MMD-VCF, 2016 WL 5796858, at *2 (D. Nev. Sept. 30, 2016) (citation omitted), *aff'd*, 842 F. App'x 151 (9th Cir. 2021). "These factors do not carry equal weight; the possibility of delay alone, for instance, cannot justify denial of leave to amend, but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied." *McCart-Pollak v. On Demand Direct Response LLC*, Case No. 2-20-cv-01624-GMN-VCF, 2023 WL 1879683, at *1 (D. Nev. Feb. 9, 2023) (citation omitted).

Federal Defendants do not oppose Plaintiffs removing the Section 1983 and "right to view humane gather" allegations which Plaintiffs admit were improperly included in the TAC. But Plaintiffs' Motion for Leave should otherwise be denied because it seeks to plead a modified

6

version of the mandamus claim asserted in the TAC.[3]

First, as explained above, Plaintiffs' first claim, including as modified in the proposed Fourth Amended Complaint, fails as a matter of law. Thus, leave to amend should be denied for futility. *See Wild Horse Educ. v. U.S. Dep't of Interior,* No. 3:23-cv-00372-LRH-CLB, 2024 WL 2060272, at *8 (D. Nev. May 8, 2024) (this Court denying leave to amend the original first claim because "amendment would be futile"); *On Demand Direct Response*, 2016 WL 5796858, at *2 ("Although leave to amend a complaint is liberally granted under Rule 15, 'leave to amend need not be granted if the proposed amended complaint would be subject to dismissal.'" (citation omitted)). Plaintiffs agree that a finding of futility should be dispositive. *See* ECF No. 63 at 6 ("If the Court grants Defendants' motion to dismiss Plaintiffs' new cause of action, it should deny this motion for leave to amend and vice versa.").

But if the Court examines the remaining factors, they also weigh against granting leave to amend. Plaintiffs' proposed Fourth Amended Complaint is their fifth attempt at pleading a claim to require some sort of oversight over BLM's compliance with the Wild Horse Act's humane handling provisions. This repeated failure to cure deficiencies weighs against granting leave to amend. *McCart-Pollak*, 2023 WL 1879683, at *3 ("Plaintiff has previously amended her complaint three times, and thus has already filed a total of four complaints in this case, which weighs against granting leave to amend."). And while Plaintiffs have shifted legal theories, the factual allegations supporting each version of this claim—including the latest—were available to them when they filed this case last July.[4] Indeed, other than putting a new legal label on the claim, Plaintiffs' allegations about humane handling have not meaningfully changed since the

---

[3] Federal Defendants take no position on the various other minor changes in Plaintiffs' proposed Fourth Amended Complaint. *See* ECF No. 63 at 15 ¶ 26; *id.* at 30 ¶ 113; *id.* at 32 ¶¶ C, D, E, H.

[4] Seemingly the only factual allegations that could not have been made in the First Amended Complaint are those surrounding BLM's emergency gather in the Maverick-Medicine HMA in late August/early September of this year. *See* ECF 63 at 24. But Plaintiffs include these allegations only to show the number of horses gathered from the Antelope and Triple B Complexes. They allege nothing unique about the recent Maverick-Medicine gather, and certainly nothing justifying why they waited until now to assert a claim to enforce the Wild Horse Act's humane handling provision.

First Amended Complaint. *Compare* ECF No. 38 ¶¶ 68–75 *with* ECF No. 63 at 26 ¶ 84–27 ¶ 92 (alleging nearly identical issues).[5] This also weighs against granting leave to amend. *See McCart-Pollak*, 2023 WL 1879683, at *3 (that "none of the facts which form the predicate of this claim were unavailable" when prior complaints were filed "weighs against" granting leave).

Finally, Federal Defendants will be prejudiced by the undue delay accompanying any further amendment. This case has been pending for almost 15 months. The only reason Federal Defendants have not answered or lodged the record, *see* ECF No. 63 at 6, is because they had to file an initial motion to dismiss, oppose Plaintiffs' motion for reconsideration (which Plaintiffs filed instead of amending per the Court's order), and now file the MTD/MTS as well as oppose Plaintiffs' Motion for Leave. Allowing Plaintiffs to assert a new claim now that they could have brought over a year ago would further delay resolution of this case, likely require more motions on the pleadings, and thereby prejudice Federal Defendants. *See, e.g.*, *Spindler v. City of Los Angeles*, No. CV 16-5655-JLS(E), 2019 WL 13032141, at *13 (C.D. Cal. Feb. 14, 2019) (finding Plaintiffs' pleading strategy "required Defendants to file multiple motions to dismiss repetitive, confused pleadings over a span of more than two years, which suggests undue delay necessarily resulting in prejudice to Defendants"); *McCart-Pollak*, 2023 WL 1879683, at *3 ("Defendants would be unduly prejudiced if the possible disposition and resolution of this case was effectively halted, and they were required to restart the litigation cycle by filing a third motion to strike or second motion to dismiss, and later, a second motion for summary judgment.").

Accordingly, the Court should deny Plaintiffs' Motion for Leave to Amend insofar as it seeks to plead a modified version of the mandamus claim pled in the TAC.

## CONCLUSION

For these reasons, the Court should grant Federal Defendants' MTD/MTS and deny Plaintiffs' Motion for Leave to the extent that it seeks to plead a modified version of the first claim in the TAC.

---

[5] As explained, Federal Defendants deny these allegations. *See* ECF No. 59 at 17 n.7.

8

Dated: October 22, 2024

Respectfully submitted,
TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Joseph W. Crusham*
JOSEPH W. CRUSHAM, Trial Attorney
(CA Bar No. 324764)
Wildlife & Marine Resources Section
Phone: (202) 307-1145
Email: joseph.crusham@usdoj.gov

PETER BROCKER, Trial Attorney
(NYS Bar No. 5385448)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 305-8636
Email: peter.brocker@usdoj.gov

*Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2024, I electronically filed and served the foregoing with the Clerk of the Court for the United States District Court for the District of Nevada using the CM/ECF system, which will send notification of this filing to the attorneys of record.

*/s/ Joseph W. Crusham*
Joseph W. Crusham
Attorney for Federal Defendants