BRENT M. RESH
(Nev. Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(Cal. Bar No. 314898, pro hac vice)
JENNIFER RAE LOVKO
(Cal. Bar No. 208855, pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| WILD HORSE EDUCATION, a non-profit corporation; and LAURA LEIGH, individually, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management, <br><br> Defendants. | CASE NO. 3:23-cv-00372-LRH-CB <br><br> **SECOND DECLARATION OF LAURA LEIGH IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, Laura Leigh, declare and state as follows:

1. I am the President and Founder of Wild Horse Education and have been monitoring rangeland and removal protocol in the state of Nevada and elsewhere for over 15 years

2. I am trained and certified in Technical Large Animal Rescue and certified by the Science and Conservation Center on planning, monitoring and executing population growth suppression programs for free-roaming wild horses and burros.

3. I am BLM-certified in Off-Road Driving and Flight (for purposes of foyer monitoring and gather operations), and I am trained in the self-assessment tool and CAWP protocols created by BLM.

4. In a professional capacity I have worked inside BLM, assisting the agency with backlogs in monitoring, logging data, field survey backlogs and NEPA document drafting.

5. I have done field monitoring privately and in conjunction with BLM.

6. I have been around horses all of my life and been personally involved in addressing behavioral and physical rehabilitation for abused and neglected horses. Currently, I own and care for 4 wild horses.

7. My love for horses (wild and domestic) has led to a life where financial remuneration is not a priority, and instead, I devote myself to addressing failures in systems that leave wild horses vulnerable to mismanagement and slaughter.

8. Attached hereto as <u>Exhibit A</u> is a true and correct copy of excerpts from BLM's Wild Horse and Burros Management Handbook, H-4700-1.

9. Attached hereto as <u>Exhibit B</u> is a true and correct copy of excerpts from the 2017 EA for the Antelope and Triple B Complexes.

10. The 2017 EA identifies the gather plan as being necessary to achieve and maintain a proper horse population in order to prevent undue or unnecessary degradation of the public lands associated with excess wild horses and to restore a thriving natural ecological balance and multiple-use relationship on public lands. *See* Exhibit B, p.10. Toward this end,

BLM identified the need to remove 3,370 to achieve low AML. Dkt. 060-2 at ¶7.

11. I am aware that the multiple uses associated with the Triple B Complex include mining operations, grazing by livestock, grazing by wild horses, grazing by wildlife activities, and recreational activities (including off-highway vehicle use). *See also* Exhibit B, pp.46, 69, 119, 124.)

12. In the Triple B Complex, I have repeatedly witnessed BLM remove horses from areas that were either the easiest to access or were the subject of contention with livestock or mining owners. In so doing, BLM often has ignored areas where existing rangeland conditions may have warranted prioritization. BLM's pattern of removal also has failed to address the migratory patterns of wild horses in the Complex, resulting in a flawed plan to address overpopulation and rangeland health.

13. Relatedly, BLM's removal of horses in the Triple B Complex has not focused on any plan related to populations and HMA AML, but rather, the agency has improperly focused on horse population and AML as a congregate for the Complex.[1] This also has resulted in removals occurring in unnecessary areas and has allowed horse populations to grow in areas where actual rangeland conditions might warrant removal.

14. In sum, BLM not only has improperly adopted a phased gather plan that violates the Wild Horse Act, but the agency also has mismanaged the removal operations. My observation of BLM actions over the past 15 years demonstrates that BLM's main goal is to remove horses that might compromise other multiple uses; BLM is less focused on herd health and overall rangeland conditions.

15. BLM has a history of conducting emergency gathers in the Maverick-Medicine

---

[1] AMLs are tailored for individual herd management areas (HMAs) and not for a complex in its entirety. *See* Exhibit A, p.56 (AML is the "number of adult horses or burros … to be managed within an HMA"). Here, the Triple B Complex consists of the Triple B HMA, Maverick Medicine HMA, and Antelope Valley West HMA. The Complex also contains the Cherry Springs Wild Horse Territory (WHT), which is managed in accordance with an agreement between BLM and USFS. Dkt. 60-1, pp.8-9. The low AMLs for each are 250 for the Triple B HMA, 166 for the Maverick Medicine HMA, 16 for the Antelope West HMA, and 40 for the Cherry Springs WHT. *Id.*

HMA as horse use can increase in this area because mining disturbances trigger clustered herd movement, and BLM has neglected repairing and approving water sources. While Wild Horse Education appealed the lack of mitigation due to mining fencing and disturbances that exacerbate the water issue, and have reached out repeatedly to BLM to address this issue (only to be ignored), we did not individually oppose the August 2024 emergency gather because a removal would impact serious and site-specific suffering.

16. Despite its mismanagement, despite conducting an emergency gather only _two months_ ago, and despite having already removed more horses than contemplated by the 2017 EA, BLM now contends that continued removal of horses is necessary. In this regard, BLM provides declarations with photographs and exhibits that reference rangeland and horse conditions in 2023 and 2024 – years after the 2017 EA adopted a phased gather plan. These photographs and exhibits are irrelevant to BLM's decision to adopted the phased gather plan, and they appear to intentionally mislead the Court.

17. For example, the declarations submitted by BLM only address population numbers and rangeland conditions taken after adoption of the 2017 EA. This "evidence" is irrelevant to BLM's 2017 decision.

18. In discussing _current_ rangeland conditions, BLM states that the Triple B Complex experienced drought conditions from 2020 through early 2023. Dkt. 062-2 at ¶15. Also, significant snowpack exists in the Complex as of May 2023. _Id._ at ¶13. This implies that drought conditions are ending, but BLM fails to acknowledge this fact.

19. The photographs in the declarations of Bruce Thompson consist of photos depicting range conditions and dead horses in the Triple B Complex. These photos were taken either in 2022, 2023, or 2024.[2] Most of the photos do not specify the exact location where taken; however, based on my familiarity with the Complex, I am aware that the vast majority were

---

[2] Figure 7 in Thompson's declaration is absolutely a heartbreaking image taken on August 7, 2024 – before the emergency removal in the Maverick-Medicine HMA was completed. The photographs in Thompson's declaration point to BLM's lack of mitigation and pro-active management planning; they do not illustrate the need to do a Complex-wide removal in November.

taken in the Maverick-Medicine HMA. This is the HMA where BLM recently conducted an emergency gather. Thus, not only are the declaration and photos irrelevant to BLM's 2017 decision, but they also are not indicative of the horse population or rangeland conditions for the vast majority of the Complex (which consists of *1,632,324 acres*, three HMAs, and one wild horse territory).

20. The photographs show approximately a dozen dead horses, which BLM attributes to forage and water availability (without producing evidence as to the cause of death). Even if this is so, BLM is disingenuous in implying that these deaths warrant the removal of over 2,000 more horses in November of 2024. The agency actually states that more than a dozen horses are likely to die as a result of the gather! (Benjamin Noyes states in his declaration that 1.2 – 2.7% of horses previously gathered in the Triple B Complex from 2017 to the present have died as a result of acute and chronic injuries.[3] Dkt. 066-1 at ¶¶14-19. And, if horse deaths occurring during transport or at off-range corrals are considered, Wild Horse Education's investigative work consistently holds that 12% is the average death rate occurring as a result of gathering and removing wild horses from public lands.)

21. A few photographs referenced in Thompson's declaration depict the Cherry Spring Wild Horse Territory (WHT), which is jointly managed by BLM and the US Forest Service. The issues with water at Cherry Spring have existed longer than I have been an advocate, with the area seeing increased horse use due to the expansion of mining to the south. Despite this, BLM has repeatedly refused to manage the area in a manner that actually addresses the problem. Instead, BLM pulls out "evidence" about Cherry Spring to justify Complex-wide roundups.

22. Figure 12 of Thompson's declaration depicts a water trough at Cherry Springs, implying that the WHT has insufficient water for wild horses. But, the condition of the troughs is

---

[3] Even if the Court only examines the number of horses who died acutely as a result of the gather (versus as a result of pre-existing conditions), more than a dozen have died during the gathers. Dkt. 066-1 at ¶¶14-19.)

the result of disrepair (which has been an issue for many years) and is not caused by drought. Nonfunctional water sources in the Triple B Complex are evidence that BLM has failed to address water availability through its normal course of business (such as through funding repairs or mitigating against improper usage of water sources by livestock).

23. I have repeatedly asked BLM to provide me with information regarding recurring problems in the Triple B Complex. In doing so, I have asked for removal target numbers for each of the HMAs or WHT. This request was based upon my observation that BLM regularly relies upon a small area of the Complex to justify removals throughout the entirety of the Complex. BLM has refused my requests for information, leading me no alternative than to file litigation in 2023.

24. Based upon my years of documenting the Triple B Complex range before and after BLM removals, as well as my attempts to address recurring problems in the Complex, I understand that removal of wild horses sometimes is warranted. Emergencies also may arise (particularly in the Maverick Medicine HMA), as previously addressed. However, removal must follow the procedural requirements of the Wild Horse Act and NEPA. Without adherence to these requirements, removal is done in a vacuum without consideration of necessary factors and without input from the public.

25. The November 2024 gather is not based upon the 2017 EA and is not an emergency gather. The public has not been provided current population and rangeland health data to comment on. Instead, BLM would have the Court allow a gather of more than 2,000 more horses in the Triple B Complex because (1) an emergency gather *might* be necessary at some undetermined date in the future for some unidentified portion of the Complex, and (2) some photographs taken in 2022-2024 show a small portion of the Complex's 1,632,324 acres have been impacted by drought conditions. Based on this, BLM asks this Court to give the agency a pass on the requirements of the Wild Horse Act and NEPA.

26. As further evidence that BLM's declarations and photographs are misleading, I am including photographs that I took in the Triple B Complex in 2024. These photographs show

that drought conditions do not permeate the entirety of the Triple B Complex – they do not even permeate the entirety of the Maverick Medicine HMA or Cherry Springs WHT.



Figure 1. Triple B HMA, May 2024



Figure 2. Triple B HMA (south of Cherry Creek), May 2024

//

//

//



Figure 3. Pronghorn near wild horses inside the Triple B HMA, Butte Mountains, June 2024



Figure 4. Triple B HMA (Butte Valley), May 2024

//



Figure 5.  Livestock inside the Triple B HMA (south of Cherry Creek Mountain), June 2024

27. I am aware that the Court will rule upon Plaintiffs' motion shortly before November 1, when the next gather currently is scheduled to begin. To issue a temporary restraining order or preliminary injunction will not prejudice BLM as the agency regularly changes the start dates for planned gathers.

28. BLM publishes tentative schedules for gathers; however, these schedules are predicated upon an understanding that they always are subject to change. Dkt. 060-1, p.101.

29. In addition to changing the dates for planned gathers, BLM also changes dates for emergency gathers.

30. The following table, which was compiled from BLM tentative schedules, BLM press releases, and BLM's website page for Gathers and Fertility Control Operations (at https://www.blm.gov/ programs/wild-horse-and-burro/herd-management/gathers-and-fertility-control-operations) identifies just some of the recent gathers that BLM has completely dropped after initially scheduling:

//

//

| Name of Gather | Emergency Gather? | Gather Occurred? | Original BLM Schedule Date | Re-scheduled Date(s) - Subsequently Dropped |
|---|---|---|---|---|
| Antelope Hills HMA (WY) | No | No | 12/8/2023 | 9/15/2024 |
| Beatty Butte HMA (OR) | No | No | 8/28/2023 | 9/28/2023 |
| Centennial HA (CA) | No | No | 10/16/2023 | 12/8/2023; 3/5/2024; 6/3/2024; 10/7/2024 |
| Chloride Canyon HMA (CA) | Yes | No | 8/28/2023 | 9/28/2023 |
| Chocolate HA and Mule Mountain HMA (CA) | Yes | No | 8/28/2023 | 9/28/2023 |
| Lost Creek HMA (WY) | No | No | 12/8/2023 | NA |
| North Hills HMA (UT) | Yes | No | 10/7/2024 | NA |
| Paisley Desert HMA (OR) | Yes | No | 8/28/2023 | 9/28/2023 |
| Pokegama HMA (CA/NV) | Yes | No | 8/28/2023 | 9/28/2023 |
| Silver King HMA (NV) | Yes | No | 8/28/2023 | 9/28/2023 |
| Tilly Creek HMA (UT) | Yes | No | 7/31/2024 | 8/28/2024; 10/7/2024 |
| Warm Springs Canyon HMA (NV) | No | No | 12/8/2023 | 3/15/2024 |

31.     Temporary restraining orders or preliminary injunctions also have been issued previously in relation to BLM gathers – with injunctive relief occurring just days before planned gathers. For example, in *Friends of Animals v. United States BLM*, No. 3:15-CV-0057-LRH-WGC, 2015 U.S. Dist. LEXIS 17575 (D. Nev. Feb. 11, 2015), Judge Larry Hicks issued a preliminary injunction preventing BLM from gathering horses in the Pine Nut HMA. BLM sought to gather horses on February 15, 2015, with the gather predicated on a 2010 EA. The Court agreed that Plaintiffs were likely to succeed in proving that BLM broke the law by authorizing the roundup without conducting a new or supplemental environmental assessment

under NEPA. Also, in *Kathrens v. Zinke*, 323 F. Supp. 3d 1142, 1155 (D. Mont. 2018), the Court issued a temporary restraining order two days before a planned gather. BLM complained that delay would result in financial loss and make the roundup more difficult to conduct; however, the Court did not find this argument persuasive.

32. On December 23, 2023, BLM announced the Maverick Medicine and Triple B as distinct HMA gathers tentatively set to begin in September of 2024. Neither of the gathers were emergency gathers. This information was on a tentative schedule created by BLM, and this schedule noted that dates were subject to change based on budget and holding space availability. I am aware that the dates on these tentative schedules are regularly dropped or re-scheduled.

33. When the fiscal year ended, BLM removed the Triple B HMA from the schedule. The Maverick Medicine gather was re-scheduled to start in August of 2024 as an emergency gather. I did not object to this gather specifically because it was an emergency gather. As I noted above, I understand that emergencies sometimes necessitate removals.

34. On September 9, 2024, BLM created its tentative gather schedule for fiscal year 2025, which identifies a gather scheduled to begin on November 1, 2024 in the Triple B Complex (Triple B and Maverick Medicine HMAs). An amended schedule was made available to the public on October 9, 2024, and we filed our motion for a temporary restraining order and preliminary judgment on the very next day.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 27th day of October 2024 in Battle Mountain, Nevada.

*/s/ Laura Leigh*
Laura Leigh