UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WILD HORSE EDUCATION, a non-profit corporation, and LAURA LEIGH, individually, | Case No. 3:23-cv-00372-MMD-CLB |
| Plaintiffs, | ORDER |
| v. | |
| UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, and JON RABY, Nevada State Director of the Bureau of Land Management, | |
| Defendants. | |

## I.    SUMMARY

Plaintiffs Wild Horse Education and Laura Leigh sued Defendants United States Department of Interior, Bureau of Land Management ("BLM"), and Jon Raby (the Nevada state director of BLM) to challenge Defendants' continued maintenance efforts of sustainable wild horse and burro populations in Nevada. (ECF No. 1.) Before the Court are: (1) Defendants' partial motion to dismiss Plaintiffs' Third Amended Complaint ("TAC") (ECF No. 59);[1] (2) Plaintiffs' motion for a temporary restraining order (based on their TAC) seeking to enjoin or restrict a BLM gather of wild horses scheduled to start November 1, 2024 (ECF No. 60 ("TRO Motion"));[2] and (3) Plaintiffs' motion for leave to file a proposed Fourth Amended Complaint ("FAC") (ECF No. 63).[3] As further explained below, the Court will grant the partial motion to dismiss, deny the motion for leave to amend as futile but direct Plaintiffs to otherwise amend, and deny the TRO Motion.

---

[1]Plaintiffs responded (ECF No. 64) and Defendants replied (ECF No. 65).

[2]Defendants responded (ECF No. 66) and Plaintiffs replied (ECF No. 68).

[3]Defendants responded. (ECF No. 65.)

## II.    BACKGROUND

As it did in its last order denying reconsideration of what it called the Prior Order (ECF No. 55 ("Reconsideration Order")), the Court again incorporates by reference the Prior Order's extensive recitation of background facts (ECF No. 48 at 1-7).[4] In the Reconsideration Order, the Court also extended the deadline for Plaintiffs to file a third amended complaint consistent with the rulings in the Prior Order to 30 days from the date the Reconsideration Order was entered. (ECF No. 55 at 7.)

Plaintiffs filed the TAC by the deadline set in the Reconsideration Order. (ECF No. 58.) The TAC asserts four claims: (1) for a writ of mandamus under 28 U.S.C. § 1361 seeking to prevent BLM from conducting wild horse gathers without meeting BLM's Comprehensive Animal Welfare Program ("CAWP") standards; (2) alleging violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A) & (C) because BLM adopted a ten-year, phased gather based on a single, 2017 Environmental Assessment ("2017 EA"); (3) alleging violation of the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370h ("NEPA") and APA because BLM removed too many wild horses without adequately considering the environmental consequences of doing so; and (4) a First Amendment claim based on Defendants preventing Plaintiffs from observing and documenting BLM's wild horse gathers in the way Plaintiffs would like to. (ECF No. 58 at 20-23.)

Defendants then filed their pending partial motion to dismiss the TAC, arguing that Plaintiffs' first claim based on violation of CAWP standards exceeds the scope of the Court's leave to amend and otherwise fails for multiple, alternative reasons. (ECF No. 59 at 13-19.) Defendants further ask the Court to strike the references to Section 1983 and a supposed right to view 'humane' gathers from Plaintiffs' fourth claim alleging a First Amendment violation because the Court previously and specifically told them they may not include those references in any amended complaint. (*Id.* at 19-20.)

---

[4]This case was reassigned to the Court from United States District Judge Larry R. Hicks. (ECF No. 49.) The Court refers to itself and Judge Hicks interchangeably in this order.

Plaintiffs proceeded to file their TRO Motion before responding to Defendants' partial motion to dismiss. (ECF No. 60.) However, when they did respond to Defendants' partial motion to dismiss, they conceded it was meritorious in a few ways. First, they simultaneously sought leave to file an amended complaint along with their response. (ECF Nos. 63, 64.) Second, while Plaintiffs offer some arguments as to why their first claim for mandamus should not be dismissed (ECF No. 64 at 3-8), they also seek leave to file the proposed FAC, which contains a proposed, revised mandamus claim based not on violation of CAWP standards but instead on a purported violation of the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. § 1331, *et seq.* (the "Wild Horse Act") itself, which Plaintiffs contend similarly requires humane treatment of wild horses during gathers (ECF No. 63 at 28). This amounts to a concession that their first mandamus claim in the TAC based on CAWP standards is not viable. Third, Plaintiffs do not oppose Defendants' motion to strike references to damages under 42 U.S.C § 1983 and the right to view animals being treated humanely in their fourth claim for First Amendment violations, noting that they have made those changes in their proposed FAC. (ECF No. 64 at 8; *see also* ECF No. 63 at 30-31 (reflecting amendment in line with Defendants' motion to strike).)

## III.    DISCUSSION

This leaves the Court in a procedurally untenable situation where Plaintiffs seek a temporary restraining order based on a complaint that they concede is not viable, and which they currently seek to amend. Indeed, granting either Defendants' partial motion to dismiss or Plaintiffs' motion for leave to amend would render the TAC inoperative, and thus leave Plaintiffs' TRO Motion untethered to an operative complaint. But as it happens, the Court is persuaded by Defendants' arguments presented in their partial motion to dismiss. So the Court turns to that first.

### A.    Motions to Dismiss and to Amend

To start, the Court grants the portion of Defendants' partial motion to dismiss seeking to strike Plaintiffs' allegations regarding damages and a purported First

1   Amendment right to view humane gathers, as Plaintiffs concede and agree that dismissal

2   of those allegations is appropriate. (ECF Nos. 59 at 19-20 (arguing for striking those

3   allegations), 63 at 7 (seeking leave to remove those allegations), 64 at 8 (noting they do

4   not oppose Defendants' motion to strike).)

5          Turning to the portion of Defendants' motion attacking Plaintiffs' first claim for

6   violation of BLM's CWAP standards, Plaintiffs effectively concede that claim is not viable

7   as alleged in the TAC because they seek to amend it to instead allege a violation of the

8   humane treatment standards in the Wild Horse Act itself. (ECF Nos. 63 at 28.) The Court

9   accordingly grants Defendants' partial motion to dismiss Plaintiffs' first claim as it is

10  alleged in the TAC. (ECF No. 58 at 20.)

11         The question then becomes whether the Court should grant Plaintiffs leave to

12  amend their first claim as they propose in their motion to amend and proposed FAC. (ECF

13  No. 63 at 28 (including a proposed mandamus claim based on humane treatment

14  obligations in the Wild Horse Act).) Defendants argue that permitting amendment of this

15  claim in this way would be futile because mandamus is unavailable as Plaintiffs have an

16  adequate remedy under the APA, and ensuring the humane capture and removal of

17  excess wild horses in compliance with the Wild Horse Act does not amount to a discrete

18  agency action for which judicial review is available under APA § 706(1). (ECF No. 65 at

19  6-7.) The Court agrees with Defendants.

20         While it does not matter too much because, "the showing required to support a

21  request for an order under § 706(1) compelling an agency to take a discrete action mirrors

22  the showing that is required to obtain mandamus-type relief[,]" *see Plaskett v. Wormuth*,

23  18 F.4th 1072, 1081 (9th Cir. 2021), Plaintiffs' approach—consistent between the TAC

24  and proposed FAC—of alleging this first claim as one for writ of mandamus is not viable,

25  *see Nova Stylings, Inc. v. Ladd*, 695 F.2d 1179, 1182 (9th Cir. 1983) ("The availability of

26  review through the Administrative Procedure Act . . . is an adequate remedy precluding

27  mandamus jurisdiction."). And 5 U.S.C. § 706(1) permits the Court to "compel agency

28  action unlawfully withheld or unreasonably delayed[.]" That is what Plaintiffs want here.

1    They want the Court to order BLM to conduct its gathers humanely. (ECF No. 63 at 28,

2    31-32.) Thus, Plaintiffs' potential remedy lies under § 706(1).

3        But a § 706(1) claim is only cognizable "where a plaintiff asserts that an agency

4    failed to take a *discrete* agency action that it is *required to take*." *Hells Canyon Pres.*

5    *Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (citation omitted, emphasis

6    in original). And, as the Court held in a 2014 case involving one of the same plaintiffs as

7    this case, "ensuring the humane capture and removal of excess wild horses in compliance

8    with the Wild Horse Act [] does not amount to a discrete agency action for which judicial

9    review is available under § 706(1)." *Leigh v. Salazar*, No. 3:13-cv-00006-MMD, 2014 WL

10   4700016, at *5 (D. Nev. Sept. 22, 2014); *see also id.* (dismissing the claim). Plaintiffs do

11   not attempt to address, much less distinguish, this decision. (ECF Nos. 63, 64.)

12       Plaintiffs do, however, attempt to distinguish another decision by a different court

13   in this district from that same year on the basis that it contained insufficient analysis and

14   did not address BLM's compliance with veterinary standards reflected in textbooks. (ECF

15   No. 64 at 5 n.1.) But that court used the definition of 'humane' provided in federal

16   regulations as "handling compatible with animal husbandry practices accepted in the

17   veterinary community" in finding that "plaintiff's [again, one of the same plaintiffs as in this

18   case] claim that defendants have failed to ensure the gathers are conducted 'humanely'

19   is not final agency action that may be challenged under the APA." *Leigh v. Jewell*, No.

20   3:11-CV-00608-HDM, 2014 WL 31675, at *5 (D. Nev. Jan. 3, 2014). Moreover, and

21   contrary to Plaintiffs' representation that *Jewell* contained 'no analysis,' the decision

22   addressed two possible ways of construing the plaintiff's humane treatment claim,

23   examined leading cases in this area of the law, and addressed and rejected several

24   alterative arguments that the plaintiffs offered. *See id.* at *3-*7. The Court accordingly

25   finds *Jewell* contained sufficient analysis and is analogous to this case.

26       In sum, even as rephrased in the proposed FAC, Plaintiffs' first claim seeking to

27   compel BLM to treat wild horses humanely during gathers is not cognizable. *See Salazar*,

28   2014 WL 4700016, at *5; *Jewell*, 2014 WL 31675, at *5. The Court accordingly denies

Plaintiffs' motion for leave to amend to the extent they seek leave to amend their first claim in the manner alleged in the proposed FAC. For clarity, Plaintiffs' claim asking the Court to compel BLM to treat wild horses humanely during gathers—however alleged—is dismissed with prejudice.

That said, both sides' pending filings contemplate that this case will not end with this order. And the Court agrees that is the right approach because Defendants do not seek dismissal of all of Plaintiffs' claims. (ECF No. 59.) To this end, Plaintiffs must file an amended complaint within fourteen days that includes only: (1) a claim alleging violation of the APA because BLM adopted a ten-year, phased gather plan based on the single, 2017 EA; (2) a claim alleging violation of NEPA because BLM removed too many wild horses without adequately considering the environmental consequences of doing so; and (3) a First Amendment claim amended as Plaintiffs included it in their proposed FAC. (ECF Nos. 58 at 21-22 (including these claims), 63 at 30-31 (including a revised First Amendment claim).) The Court may strike any amended complaint that does not strictly comply with this order, particularly given the opportunities Plaintiffs have been given to file a compliant amended complaint since the Court issued the Prior Order.

### B. TRO Motion

Plaintiffs do not currently have an operative complaint in this case until they file an amended complaint in line with the Court's order immediately above. And regardless, the Court has dismissed in part the TAC. Plaintiffs' pending TRO Motion is based on the TAC. (ECF No. 60 at 5-7.) Plaintiffs cannot obtain a TRO based on a complaint that is no longer operative. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20-22 (2008) (providing that a party may only obtain injunctive relief if can satisfy a four-factor test based on its claims); *Perez v. San Miguel Homes for the Elderly, LLC*, No. 15-CV-05556-DMR, 2016 WL 3709622, at *1 (N.D. Cal. Feb. 9, 2016) ("it appears that the claims that form the basis for the request for a TRO must be part of the operative complaint."); *Williams v. Sabo*, No. CV 20-1373-PA-KK, 2020 WL 5993112, at *2 (C.D. Cal. Aug. 12, 2020) ("where there

1   is no operative complaint that forms the basis for injunctive relief, a court must deny the

2   request.") (citation omitted). The Court accordingly denies the TRO Motion as moot.

3          But in addition, and alternatively, Plaintiffs have not shown they are entitled to the

4   extraordinary remedy of injunctive relief in their TRO Motion.[5] "To qualify for a preliminary

5   injunction or TRO, a plaintiff must demonstrate: (1) a likelihood of success on the merits;

6   (2) a likelihood of irreparable harm; (3) that the balance of hardships favors the plaintiff;

7   and (4) that the injunction is in the public interest." *Reno-Sparks Indian Colony v. Haaland*,

8   663 F. Supp. 3d 1188, 1195 (D. Nev. 2023), *appeal dismissed*, No. 23-15780, 2024 WL

9   2317688 (9th Cir. Jan. 4, 2024) (citing *Winter*, 555 U.S. at 20). The third and fourth factors

10  merge "when the Government is the opposing party[.]" *Nken v. Holder*, 556 U.S. 418, 435

11  (2009). Plaintiffs have not shown that they are likely to prevail on the merits of their claims

12  that are proceeding past this order.

13         Plaintiffs argue they are likely to prevail on their claims for violation of the

14  immediacy requirement in the Wild Horse Act by relying on the single 2017 EA for phased

15  gathers over the course of 10 years and their NEPA claim for removing more horses than

16  BLM accounted for in that 2017 EA because the 'immediacy requirement' of the Wild

17  Horse Act requires that BLM determine that excess horses exist before every gather and

18  BLM must similarly conduct an environmental review under NEPA before every gather.

19  (ECF No. 60 at 10-13.) As to the APA claim based on violation of the Wild Horse Act,

20  Defendants counter that the immediacy requirement in the Wild Horse Act gives BLM

21  some discretion, Plaintiffs direct their claim at the wrong agency action, and point out both

22  that the United States Court of Appeals for the Ninth Circuit already rejected a challenge

23  to the 2017 EA and approved of BLM's use of a single gather plan to cover a series of

24  gathers, and that the Court recently made a similar finding in a similar case brought by at

25  least one of the same plaintiffs. (ECF No. 66 at 17-22.) As to the NEPA claim, Defendants

26

27  ——————————————

28         [5]Because the Court had not ruled on Defendants' motion for partial dismissal when
    briefing on the TRO Motion was completed, the Court will alternatively address the TRO
    Motion on the merits.

again point to the Ninth Circuit's approval of the 2017 EA and this Court's decision in a similar case. (*Id.* at 22-24.) The Court agrees with Defendants.

"BLM's use of a single gather plan and a single environmental assessment to cover a period of years and a series of individual gather operations" "was not arbitrary or capricious." *Friends of Animals v. Silvey*, 820 F. App'x 513, 516 (9th Cir. 2020). And in *Silvey*, the Ninth Circuit affirmed the Court's decision that BLM did not violate NEPA in adopting a 2017 gather plan based on the same 2017 EA forming the basis for Plaintiffs' claims here. *See Friends of Animals v. Silvey*, 353 F. Supp. 3d 991, 1009-18 (D. Nev. 2018), *aff'd*, 820 F. App'x 513 (9th Cir. 2020). Plaintiffs are not likely to prevail on claims based on purported issues with the same key document that the Ninth Circuit already examined and found no issue with.

Moreover, the Court recently addressed similar arguments in a similar case and rejected them as unpersuasive on their merits. There, like here, Plaintiffs challenged the wrong document, an environmental assessment instead of a gather plan, which "simply analyzes the potential environmental effects of different proposed alternatives, [and thus] does not violate the [Wild Horse Act's] immediacy requirement." *Leigh v. United States Dep't of the Interior*, No. 2:22-cv-01200-MMD-BNW, 2024 WL 4279156, at *13 (D. Nev. Sept. 23, 2024). And there the Court otherwise rejected a challenge to a 20-year phased gather plan as violating the Wild Horse Act's immediacy requirement in part because "multiple round ups may be a practical necessity where a single gather decision implicates hundreds or even thousands of wild horses and burros, which cannot realistically be removed all at once[.]" *Id.* at *12. The Court also noted in that decision that—again, like here—the plaintiffs requested the prohibition of gathers while the Court could only compel BLM to gather horses more quickly. *See id.* at *11. In addition, earlier in that same case, the Court found that the plaintiffs were unlikely to prevail on the merits of their NEPA claim in part because removing more horses more quickly than contemplated in the operative environmental assessment was still covered by it and otherwise found, "[t]o the extent that Plaintiffs are arguing that the removal of such a large percentage of the population

8

1  would be detrimental to the herd itself, it is unclear whether the EA and FONSI must

2  address that question." *Leigh v. Raby*, No. 3:22-cv-00034-MMD-CLB, 2022 WL 267353,

3  at *9 (D. Nev. Jan. 28, 2022).

4       In sum, both the Court and the Ninth Circuit have considered and rejected on their

5  merits the same arguments that Plaintiffs contend they are likely to prevail on the merits

6  of under very similar circumstances to those present here. For the reasons provided in

7  those decisions and summarized above, the Court finds Plaintiffs are unlikely to prevail

8  on the merits of their Wild Horse Act and NEPA claims. And the Court ends its analysis

9  there because Plaintiffs must show they are likely to prevail on the merits to obtain an

10  injunction.[6] *See Winter*, 555 U.S. at 22.

11  **IV.    CONCLUSION**

12       The Court notes that the parties made several arguments and cited several cases

13  not discussed above. The Court has reviewed these arguments and cases and

14  determines that they do not warrant discussion as they do not affect the outcome of the

15  motions before the Court.

16       It is therefore ordered that Defendants' partial motion to dismiss the TAC (ECF No.

17  59) is granted as specified herein.

18       It is further ordered that Plaintiffs' motion for a temporary restraining order (ECF

19  No. 60) is denied as specified herein.

20       It is further ordered that Plaintiffs' motion for leave to amend (ECF No. 63) is

21  denied.

22  ///

23  ///

24  ///

25

26       [6]Plaintiffs objected in their reply to evidence Defendants submitted about current conditions in the Triple B Complex intended to support Defendants' argument that the
27  combined third and fourth factors favored denying the TRO Motion, but the Court does not resolve those objections because the Court need not—and does not—even address
28  the other *Winter* factors in concluding it will deny the TRO Motion. (ECF No. 66 at 13-15, 27-29 (summarizing evidence and making an argument based on it); ECF No. 68 at 8-11 (objecting to Defendants' proffered evidence).)

It is further ordered that Plaintiffs must file their amended complaint compliant with this order within fourteen days. Failure to timely comply may result in sanctions up to and including dismissal with prejudice of the claims proceeding in this case.

DATED THIS 29th Day of October 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE